**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

FREEDOM FROM RELIGION FOUNDATION, INC.,

     Plaintiff,

v.                                      Case No.: 08-CV-1105

MANITOWOC COUNTY, WISCONSIN
BOB ZIEGELBAUER, Manitowoc County Executive,
And JEFFREY BEYER, Manitowoc County
Public Works Director,

     Defendants.

---

**BRIEF IN SUPPORT OF FREEDOM FROM RELIGION FOUNDATION'S
MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS**

---

## INTRODUCTION

For the last sixty-two years, Manitowoc County ("County") has hosted a stand-alone nativity scene on the Manitowoc County Courthouse ("Courthouse") lawn. The "Courthouse Nativity" depicts the birth of Jesus Christ, a Christian God, and has been erected annually by either the Manitowoc County Catholic Woman's Club or the Knights of Columbus on what appears to be an alternating basis. The nativity scene is inherently religious, and its display on the lawn of the Manitowoc County Courthouse constitutes an illegal endorsement of religion by the County government.

The Courthouse lawn is not a quintessential, traditional public forum because not all types of expression are permitted without approval by the County government. Rather, the County generally requires approval for displays. However, no written guidelines exist to govern the defendants' approval or disapproval of public displays on exterior grounds of the Courthouse. No permits were applied for or issued to the Manitowoc County Catholic Woman's Club and the Knights of Columbus for the annual Courthouse Nativity. Nevertheless, the County has routinely allowed the Courthouse Nativity to be displayed each year for over sixty years without granting formal or written approval, including without approval by the Manitowoc County Public Works Committee, while approval is required of others, including non-religious or non-Catholic applicants.

This solitary display of an inherently religious symbol on the grounds of a core government building in Manitowoc County is unconstitutional. The material facts are undisputed, and the plaintiffs are entitled to summary judgment as matter of law that the County has violated the Establishment Clause of the First Amendment to the United States Constitution.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); see also Celotex Corp. v. Catrett, 47 U.S. 317, 322-23 (1986). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Ins. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the non-moving party fails to make a showing sufficient to establish the

existence of the elements essential to their case, then the moving party is entitled to summary judgment. Celotex, 477 U.S. at 322.

**STATEMENT OF UNDISPUTED FACTS THAT DEFENDANTS VIOLATED THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

**Courthouse Nativity Scene**

Since 1946, a stand-alone nativity scene has been displayed during the holiday season on the grounds of the Manitowoc County Courthouse. Defendants' Answer at ¶ 21, 22 answering ¶ 21, 22 of Complaint (Attached as Ex. A to Kratz Dec.); Kratz Dec. Ex. L, O; Gaylor Dec. Ex. F. Last year, at the end of November, the Manitowoc County Catholic Woman's Club erected the nativity scene, which stood on the northeast corner of the Courthouse grounds next to the Courthouse steps. Defendants' Answer at ¶ 15 answering ¶ 15 of Complaint (Attached as Ex. A to Kratz Dec.); Kratz Dec. Ex. O; Gaylor Dec. Ex. F. Last year, the crèche scene was on display from the last week in November 2008 until around January 10, 2009. Defendants' Answer at ¶ 18 answering ¶ 18 of Complaint (Attached as Ex. A to Kratz Dec.); Gaylor Dec. Ex. F.; Gaylor Dec. at ¶ 12, Ex. H.

The Courthouse Nativity scene depicts the birth of Jesus Christ and includes figurines representing the baby Jesus, Virgin Mary, Joseph, a shepherd, a camel, four lambs and a ram. Defendants' Answer at ¶ 16 answering ¶ 16 of Complaint (attached as Ex. A to Kratz Dec.); Rappel Dec. at ¶ 6, Ex. A, B; Gaylor Dec. Ex. F. The Courthouse Nativity scene also includes a blonde-haired angel with a sign exclaiming "Gloria in Excelsis Deo" (Glory to God in the Highest). Defendants' Answer at ¶ 17 answering ¶ 17 of Complaint (attached as Ex. A to Kratz Dec.); Rappel Dec. at ¶ 6, 7, Ex. A, B, C; Gaylor

3

Dec. Ex. F. A sign located on the crèche reads, "Christmas Blessings Sponsored by Manitowoc County Catholic Woman's Club." Rappel Dec. at ¶ 7, Ex. A, B.

Each year, the Courthouse Nativity scene is the only display on Courthouse grounds during the month of December. Kratz Dec. Ex. L. There is no permit and no approval on record for any year including the starting date of 1946 for the Courthouse Nativity. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2); Kratz Dec. Ex. D (Response to Request No. 2).

Manitowoc County Executive Bob Ziegelbauer has publicly stated that the Courthouse Nativity "looks wonderful." Answer at ¶ 30 answering ¶ 30 of Complaint (attached as Ex. A. to Kratz Dec.); Gaylor Dec. Ex. F. He has also released a statement stating that the Courthouse Nativity, "puts a little sunshine in all of our lives at this time of the year." Kratz Dec. Ex. L.

**Policies and Procedures Governing Courthouse Displays**

County approval is required for any facility use either on the exterior and interior of the Manitowoc County Courthouse grounds and building. Kratz Dec. Ex. H, I, J. No formal written policy is in place for exterior use of the Courthouse grounds, but in March 2009 the County adopted a formal written policy for interior use of the Courthouse. Kratz Dec. Ex. H, I, J.

**A. Displays on Exterior of Manitowoc County Courthouse**

No written guidelines, policies or procedures govern the defendants' approval or disapproval of public displays. Kratz Dec. Ex. D (Response to Request No. 3). Aside from the nativity display, Manitowoc County Board of Supervisors ("Board") has not

4

granted permission or given approval to any other temporary displays on the exterior of the Courthouse.  Kratz Dec. Ex. L, O; Gaylor Dec. Ex. F.

The record shows only two inquiries to use the Courthouse grounds temporarily for a winter display.  Kratz Dec. Ex. D (response to Request No. 4), F, G.  On February 2, 1993, a Manitowoc resident, Mr. Jeff Running, appeared before the Transportation and Public Works Committee and requested permission to put up a winter display on the exterior grounds of the Courthouse. Kratz Dec. Ex. E, P.  The Committee requested that Mr. Running forward a sketch to them for approval. Kratz Dec. Ex. E, P.  There are no records in any subsequent meeting minutes indicating that Mr. Running supplied a sketch, or that a sketch was approved or disapproved by the Committee.  Kratz Dec. Ex. E.

In December 2008, FFRF, on behalf of a Manitowoc resident and FFRF member, inquired about setting up its Winter Solstice Display on the grounds of the Manitowoc County Courthouse. Gaylor Dec. at ¶ 10, Ex. D.  FFRF submitted an inquiry via electronic mail to Mr. Jeffrey Beyer, of the Public Works Committee on December 8, 2008. Gaylor Dec. at ¶ 10, Ex. D.  Subsequently, FFRF was told that it would not be eligible to put up a display for the 2008 Winter Solstice in December because the Committee would not meet again until January 2009. Gaylor Dec. at ¶ 10, Ex. E.  No criteria for approval or disapproval were referenced by the Committee.

Other than these two inquiries, Manitowoc County shows no records of requests for any other temporary displays and County records do not show records of requests for the Courthouse Nativity. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2).  There are no records that either the Manitowoc County Catholic Woman's Club or the Knights of

5

Columbus appeared before the County for permission to erect the Courthouse nativity, or were asked by the County to supply a sketch, drawing or other description of the nativity scene. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2).

Manitowoc County Board Supervisor Norbert Vogt has publicly stated that an atheist display would not be appropriate for the Courthouse exterior. Gaylor Dec. at ¶ 11, Ex. F. Mr. Vogt told the Manitowoc Herald Times Reporter on December 7, 2008, that "everybody realizes there is a Supreme Being and it would be unacceptable to have a sign denying that reality." Id.

There have been only two requests for permanent displays or uses of the exterior Courthouse grounds. Kratz Dec. Ex. D (Response to Request No. 4), F, G. In 1997, the Public Works and Solid Waste Committee reviewed a request to place a memorial in the courtyard area between the Courthouse and the jail. Kratz Dec. Ex. F. On July 2, 1997, the committee recommended a resolution to be presented to the full Board at the next County Board meeting. Id. The resolution was presented on July 17, 1997, and was passed unanimously. Id.

On May 28, 2003, the Public Works and Solid Waste Advisory Committee considered a request from the Veterans of Foreign Wars (VFW). Kratz Dec. Ex. G. The VFW wanted to locate two old mailboxes on the Courthouse grounds for use as "flag retirement depositories." Id. These depositories would be used for residents to dispose worn, tattered or torn American flags. Id. This request was also forwarded to the Postmaster. Id. The Committee agreed to move ahead with this request. Id.

**Displays on Interior of Manitowoc County Courthouse**

In March 2009, after this lawsuit was filed, Manitowoc County adopted policies and procedures to govern the use of the interior of the Courthouse. Kratz Dec. Ex. H. On March 17, 2009, the Public Works Committee and the full County Board of Supervisors passed a resolution for after-hours use of the interior Courthouse areas. Kratz Dec. Ex. J. The areas inside of the Courthouse available for use are the hallway, the lobby, restrooms, rotunda and the vending area. Kratz Dec. Ex. I.

The newly adopted policy requires any person requesting use of the interior grounds of the Courthouse to receive a permit from the Public Works Committee. Id. The permits are issued on a "first come, first serve" basis. Id. Any residents or groups interested in using the facilities must apply at least two weeks before the desired date of proposed use, submit an application form, and include a description, sketch or photo of the display. Id. There is a $100 application fee for facility use. Id. If a request is denied, the Committee will give a written explanation of the denial. Id. According to the newly implemented policy, any request may be denied if deemed "inappropriate" by the Public Works Committee. Id.

Since the adoption of this policy, the plaintiff is aware of only one group that has been applied for a permit to use the Courthouse interior. Kratz Dec. Ex. K.

**Plaintiff Freedom From Religion Foundation**

The Freedom From Religion Foundation (FFRF) is a national nonprofit organization whose purpose is to protect the constitutional principle of separation between state and church and to represent the rights and views of nonbelievers. Gaylor Dec. at ¶ 2. FFRF

7

has approximately 13,900 members nationwide, with members in every state and 1,144 in Wisconsin including members in Manitowoc County. Gaylor Dec. at ¶ 2, 3. Over the years, FFRF has received complaints about the Courthouse nativity from its Manitowoc membership and also from members of the general public. Gaylor Dec. at ¶ 25, 8, Ex. C. G. Its members are offended by the display of an inherently religious and sectarian symbol on publicly owned property. Gaylor Dec. at ¶ 7, 8, Ex. A, B; Rappel Dec. at ¶ 9, 10, Ex. D. On behalf of its members, FFRF objected to the Courthouse Nativity in 2007 and again in 2008. Gaylor Dec. at ¶ 4, 9, 12, ex. C, G. FFRF requested that the government officials responsible for its display remove the symbol. Gaylor Dec. Ex. C, G.

One of FFRF's members, Paul T. Rappel, lives in Manitowoc County. Rappel Dec. at ¶ 1, 2, 10, Ex. D. Mr. Rappel resides at 6200 Silver Hills Drive in Manitowoc, WI 54220. Id. Mr. Rappel is offended by the annual display of the nativity scene at the Manitowoc County Courthouse. Rappel Dec. at ¶ 9, 10, Ex. D; Gaylor Dec. at ¶ 7, Ex. B. When the crèche is displayed each December, Mr. Rappel must drive past it every day on his way to work. Rappel Dec. at ¶ 8. He has altered his behavior to avoid the crèche. Id. At times, he is unable to avoid the nativity scene. Id.

Mr. Rappel believes that a religious symbol like the crèche does not belong on public property and has voiced publicly his objection. Rappel Dec. at ¶ 9, 10, Ex. D; Gaylor Dec. at ¶ 7, Ex. B. The display near the steps of the Courthouse sends him the message that "this building stands for Christianity and application of faith over reason…that religion holds sway in the courthouse and any justice that is dispensed will favor those

who have faith in the Christian religion." Rappel Dec. at ¶ 10, Ex. D; Gaylor Dec. at ¶ 7, Ex. B.  Mr. Rappel feels like an outsider in his own community.  Rappel Dec. at ¶ 9.

Mr. Rappel is one of several Manitowoc County members who have contacted FFRF about removing the display.  Gaylor Dec. at ¶ 5, 8, Ex. C, G.  FFRF, in advocating for and representing its membership in matters such as these, has therefore objected to the crèche display on behalf of its membership in Manitowoc County, many of whom feel the same way as Mr. Rappel.  Gaylor  Dec. at ¶ 9, 12; Ex. C, G.

## ARGUMENT

### I.    PLAINTIFF FREEDOM FROM RELIGION FOUNDATION, AS A REPRESENTATIVE ORGANIZATION, HAS STANDING TO SUE OVER THE DISPLAY OF A RELIGIOUS SYMBOL ON COUNTY PROPERTY.

FFRF as a representative organization has standing to bring this action on behalf of its members who suffer direct injury as a result of the Defendants' display of the Courthouse Nativity.  "An organization has standing to sue if (1) at least one of its members would otherwise have standing; (2) the interests at stake in the litigation are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires an individual member's participation in the lawsuit."  Sierra Club v. Franklin County, 546 F.2d 918, 925 (7th Cir. 2008); see also Pollack v. U.S. Dept of Justice, ___ F.3d ___ (7th Cir. 2009) 2009 WL2461398; Disability Rights Wisconsin v. Walworth County, 522 F.3d 796 (7th Cir. 2008).

FFRF is a national organization with approximately 13,900 members across the country, including 1,144 members in Wisconsin.  Gaylor Dec. at ¶ 2, 3.  FFRF's membership includes Manitowoc County residents.  Id.  FFRF's primary purpose is to protect the constitutional principle of separation between state and church and to

represent the rights and views of nonbelievers. Gaylor Dec. at ¶ 2. FFRF works to achieve these purposes by advocating for and representing its membership in Establishment Clause claims. Gaylor Dec. at ¶ 4, 5. One of its members, Paul T. Rappel, is a resident of Manitowoc County who has direct and unwelcome contact with the Courthouse Nativity when it's on display each December. Rappel Dec. at ¶ 1, 2, 8, 10, Ex. D.

FFRF brings this action on behalf of its Manitowoc County members, including Paul T. Rappel, who are injured by the nativity display. Accordingly, FFRF has representative standing to challenge the constitutionality of the nativity scene at the Manitowoc County Courthouse. FFRF also has organizational standing to challenge the standardless approval process required for displays other than the Courthouse Nativity.

**II. THE COURTHOUSE NATIVITY DISPLAY CONSTITUTES AN IMPERMISSIBLE GOVERNMENT ENDORSEMENT OF RELIGION, AND SPECIFICALLY CHRISTIANITY, WHICH VIOLATES THE FIRST AMENDMENT.**

The Establishment Clause of the First Amendment to the United States Constitution prohibits the government from maintaining, erecting or hosting a holiday display that consists solely of a nativity scene. See County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U.S. 573 (1989)(holding a sole nativity display at the county courthouse unconstitutional); see also American Jewish Congress v. City of Chicago, 827 F.2d 120 (7th Cir. 1987)(holding a stand alone crèche display at city hall unconstitutional); but see Lynch v. Donnelly, 465 U.S. 668 (1984)(holding a nativity scene erected in a public park as part of a larger holiday display constitutional).

The Supreme Court has held that in determining whether a nativity scene display on government property is permissible under the Establishment Clause, courts must assess

whether the display has the purpose or effect of endorsing religion.  See Allegheny v. ACLU, 492 U.S. at 598 ("the government's use of religious symbolism is unconstitutional if it has the effect of endorsing religious beliefs…"); see also American Jewish Congress v. Chicago, 827 F.2d at 126 ("The Establishment Clause is concerned with the message the government may send to its citizenry about the significance of religion.").  The Court in Allegheny stated,

> "Lynch v. Donnelly confirms, and in no way repudiates, the longstanding constitutional principle that government may not engage in a practice that has the effect of promoting or endorsing religious beliefs.  The display of the crèche in the county courthouse has this unconstitutional effect."  492 U.S. at 621.

The County's approval and hosting of the Courthouse Nativity scene is an act of government endorsement which singles out, shows preference for, and endorses one religion, in this case Christianity.  This endorsement "sends the message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community."  Lynch v. Donnelly, 465 U.S. at 688.

### A.    A solitary nativity scene displayed on courthouse grounds is unconstitutional.

It is an unconstitutional and impermissible advancement of religion by government for a nativity scene to be the sole focus of a display on government property.  See Allegheny, 492 U.S. 573 (1989)(holding that the crèche display on the Grand Staircase of the Allegheny County Courthouse violated the Establishment Clause); Smith v. County of Albemarle, 895 F.2d 953 (4th Cir. 1990)(held the display of a nativity scene on the lawn of a courthouse unconstitutional); American Jewish Congress v. City of Chicago, 827 F.2d 120 (7th Cir. 1987)(holding a stand alone crèche display at city hall

unconstitutional); <u>American Civil Liberties Union v. City of Birmingham</u>, 791 F.2d 1561

(6th Cir. 1986)(holding that display of crèche in prominent position on lawn of city hall

violated the Establishment Clause); <u>Burelle v. City of Nashua</u>, 599 F.Supp. 792

(D.C.N.H. 1984)(held that sole crèche display on city hall plaza was unconstitutional and

warranted an injunction against the license to a private organization maintaining the

display); <u>American Civil Liberties Union of Central Ohio v. County of Delaware</u>, 726 F.

Supp. 184 (S.D. Ohio 1989)(Nativity scene on Courthouse lawn found unconstitutional).

The present case is virtually indistinguishable from <u>Allegheny</u>, a case in which the

Supreme Court struck down the sole display of a crèche at a county courthouse. 492 U.S.

573. In that case, the county government had permitted a Roman Catholic organization

to display a nativity scene at the county courthouse during the winter holiday season. <u>See</u>

<u>Allegheny</u>, 492 U.S. at 579. The display included "figures of the infant Jesus, Mary,

Joseph, farm animals, shepherds, and wise men." <u>Id.</u> The crèche display included "an

angel bearing a banner that proclaims "Gloria in Excelsis Deo." <u>Id.</u> Also included on the

display was a sign that read, "This display donated by the Holy Name Society." <u>Id.</u>

In striking down the county display as an unconstitutional endorsement of

Christianity, the Court stated, "by permitting the 'display of the crèche in this particular

physical setting,' the county sends an unmistakable message that it supports and

promotes the Christian praise to God that is the crèche's religious message." <u>Id.</u> at 600.

(internal citations omitted).

The Seventh Circuit Court of Appeals also struck down the sole display of a nativity

scene in <u>American Jewish Congress v. Chicago</u>, 827 F.2d 120. In that case, a crèche was

displayed in the lobby of the Chicago City-County building, which functioned as city

hall.  See American Jewish Congress v. Chicago, 827 F.2d at 121.  The nativity scene

consisted of figurines representing Jesus, Mary, Joseph, three wise men and animals.  Id.

The court recognized this depiction of the birth of Jesus Christ constitutes the

"unequivocal Christian symbol."  Id. at 127.

The nativity display on the front lawn of the Manitowoc County Courthouse is

unconstitutional just as the nativity displays in Allegheny and American Jewish Congress

were unconstitutional.  The Courthouse Nativity in this case is nearly identical to the

display found unconstitutional in Allegheny.  The Courthouse Nativity includes the

figurines and an angel holding a banner proclaiming the Christian message, "Gloria in

Excelsis Deo" (Glory to God in the Highest).  Defendants' Answer at ¶ 16, 17 answering

¶ 16, 17 of Complaint (Attached at Ex. A to Kratz Dec.); Rappel Dec. at ¶ 6, Ex. A, B, C;

Gaylor Dec. Ex. F.  The crèche is prominently displayed on the northeast corner of the

Courthouse lawn and stands alone just as the crèche in Allegheny stood alone.

Defendants' Answer at  ¶ 15 answering  ¶ 15 of Complaint (attached as Ex. A to Kratz

Dec.); Kratz Dec. Ex. O; Gaylor Dec. Ex. F.  Just as in Allegheny, in Manitowoc County

"no viewer could reasonably think [the crèche] occupies this location without the support

and approval of the government."  492 U.S. at 599-600.  The Courthouse Nativity

occupies this conspicuous corner of the Courthouse lawn next to the steps for more than a

month each year because of the County's support and approval for more than sixty years.

Defendants' Answer at ¶ 21, 22 answering ¶ 21, 22 of Complaint (attached as Ex. A to

Kratz Dec.); Kratz Dec. Ex. L, O; Gaylor Dec. Ex. F.

**B. The placement of a solitary religious symbol, such as a nativity scene, at a core government building or seat of government conveys a message of government endorsement.**

The placement of a crèche at a core government building emphasizes the message of government endorsement.  Justice O'Connor, in her concurring opinion in <u>Allegheny</u>, wrote,

> "The display of religious symbols in public areas of core government buildings runs a special risk of 'mak[ing] religion relevant, in reality or public perception, to status in the political community.'  The Court correctly concludes that placement of the central religious symbol of the Christmas holiday season at the Allegheny County Courthouse has the unconstitutional effect of conveying a government endorsement of Christianity."  492 U.S. at 626-627.

The Seventh Circuit also has found the physical placement and setting of the sectarian displays dispositive in determining constitutionality.  In <u>American Civil Liberties Union v. City of St. Charles</u>, 794 F.2d 265, 271 (7th Cir. 1986), a case in which it was found unconstitutional to display a Latin cross outside the publicly owned and operated fire department on its roof, during the Christmas season, the Court stated,

> "When prominently displayed on a public building that is clearly marked as and known to be such, the cross dramatically conveys a message of governmental support for Christianity, whatever the intentions of those responsible for the display may be.  Such a display is not only religious but also sectarian."

Similarly, in <u>American Jewish Congress v. Chicago</u>, the Seventh Circuit reasoned that the presence of a sectarian symbol, specifically a nativity scene, at a core government building violates the constitutional principle of separation between state and church. 827 F.2d at 128.  The display of the crèche in the lobby of city hall "brings together Church and State in a manner that unmistakably suggests their alliance."  <u>Id.</u>  A city hall is "a setting where the presence of government is pervasive and inescapable." <u>Id.</u> at 126.  The

14

court found that the display constituted government endorsement of Christianity. It stated,

> "Because City Hall is so plainly under government ownership and control, every display and activity in the building is implicitly marked with the stamp of government approval. The presence of a nativity scene in the lobby, therefore, inevitably creates a clear and strong impression that the local government tacitly endorses Christianity." Id. at 128.

The Seventh Circuit reiterated the importance of the physical setting of the religious symbol in determining its constitutionality most recently in Books v. Elkhart, 235 F.3d 292 (7th Cir. 2000)(holding that a display of a monument inscribed with the Ten Commandments on the lawn of a city's municipal building violated the Establishment Clause.) The Court in that case noted, "the seat of government 'is so plainly under government ownership and control' that every display on its property is marked implicitly with governmental approval." Id. at 306 (citations omitted).

Here, the Manitowoc County Courthouse is the County seat, the core of County government, where citizens are compelled to enter to do County business. During December every year since 1946, Manitowoc citizens like Paul Rappel have been forced to observe a large Catholic nativity display as they pass by the front of the Courthouse or when they enter the Courthouse. Additionally, County employees have had to pass by the annual display to get to work. The message of endorsement of this Catholic display is inescapable and inappropriate by a County government.

**C. The Nativity Scene is an inherently religious display, which turns any non-Christians in Manitowoc County into political outsiders.**

The nativity scene is a purely sectarian symbol that is a "recreation of an event that lies at the heart of the Christian faith." Lynch, 465 U.S. at 711-712 (Brennan, J., dissenting). The nativity scene is an inherently religious symbol whose significance is

only meaningful to Christians.  See id. ("The essence of the crèche's symbolic purpose and effect is to prompt the observer to experience a sense of simple awe and wonder appropriate to the contemplation of one of the central elements of Christian dogma- that God sent His son into the world to be a Messiah").  "The Nativity scene is an unmistakable reminder of the holiday's religious origins."  American Civil Liberties Union v. City of St. Charles, 794 F.2d at 272.

    The Courthouse Nativity in this case is undeniably an inherently religious display that is intended to convey religious significance.  Permitting the sole display of this inherently Christian symbol each year for the last sixty-two years on the Courthouse's front lawn, in a prominent position close to the steps and entrance of the building, and never requiring an application or permit, sends a strong, unequivocal message that Manitowoc County endorses this Christian message, and favors and aligns itself with Christians.  The County's message of endorsement of one religion and of religion over non-religion offends the fifteen percent of the U.S. and Wisconsin population that identifies itself as non-religious.[1]  It excludes Manitowoc citizens who might be non-Christian— Jews, Hindus, Buddhists, Muslims, and Native American religion practitioners, animists, etc.  It sends the unlawful message to any non-Christian or non-religious Manitowoc County residents that they are not "full members of the political community" and an accompanying message to Christians that "they are insiders, favored members of the political community."  465 U.S. at 688.

    The Christian message — which is exclusionary to non-Christians and nonbelievers— conveyed by the annual crèche display is readily apparent in Manitowoc

---

[1] Kosmin, Barry A. and Keysar, Ariela, *American Religious Identification Survey* http://www.americanreligionsurvey-aris.org/ Last visited September 30, 2009.

County as evidenced by the letters to the editor of the Manitowoc Herald Times Reporter from last year.  Gaylor Dec. at ¶ 7, Ex. A, B.  FFRF member Paul Rappel stated that the recurring display makes him feel like an outsider in the County he has lived in and called home for his entire life.  Rappel Dec. at ¶ 9.  He believes, "the placement of the nativity scene at the steps of the Manitowoc County Courthouse sends a message that the building stands for Christianity and the application of faith over reason; that religion holds sway in this Courthouse, and any justice that is dispensed will favor those who have faith in the Christian religion."  Rappel Dec. at ¶ 10, Ex. D.; Gaylor Dec. at ¶ 7, Ex. B.  Rod and Cheryl Kjelstrup of Mishicot recognized the exclusionary message of the Courthouse Nativity to residents of Manitowoc County and wrote to the Herald Times Reporter on December 3, 2008, "Moving [the crèche] off public property would be a good-will gesture promoting a more inclusive holiday…"  Kratz Dec. Ex. Q.  These sentiments were not isolated to the 2008 display.  In 2007, Rich Bouril told the Manitowoc Herald Times Reporter that the annual nativity was "in your face.  It doesn't belong, and it's disturbing to the religious minorities."  Kratz Dec. Ex. O.

     **D. Disclaimers of private ownership and sponsorship do not cure the constitutional violation.**

The unconstitutional display of a sole nativity scene on government property cannot be remedied or cured by the presence of a disclaimer, or sign disclosing private ownership and sponsorship of the religious display.  See 492 U.S. at 600; 827 F.2d at 128.

In Allegheny, the Supreme Court found that, despite a sign indicating private ownership of the crèche by a Roman Catholic organization, the sole display of a nativity scene in the courthouse was an Establishment Clause violation.  492 U.S. at 600.  The

Court stated that the "sign simply demonstrated that the government is endorsing the religious message of that organization rather than communicating a message of its own." Id.  It continued, "… the Establishment Clause does not limit only the religious content of the government's own communication.  It also prohibits the government's support and promotion of religious communications by religious organizations."  Id.

Similarly, in American Jewish Congress, the Seventh Circuit found that disclaimers did not mitigate the Establishment Clause concerns presented by the solitary display of a religious symbol in "a setting where the presence of government is pervasive and inescapable."  827 F.2d at 126.  The court stated, "…the message of government endorsement generated by this display was too pervasive to be mitigated by the presence of disclaimers."  Id.

In the case at bar, the Courthouse Nativity bears a sign that reads, "Christmas Blessings Sponsored by the Manitowoc County Catholic Woman's Club." Rappel Dec. at ¶ 7, Ex. A, B.  Like the signs in Allegheny and American Jewish Congress, this sign indicating private ownership by a Catholic group does not alter the conclusion that the display constitutes an impermissible County endorsement of religion, specifically Christianity.  The sign in no way leads a reasonable observer to conclude that the County does not prefer Christianity and more specifically the Roman Catholic brand of Christianity.  Rather, the sign simply demonstrates that Manitowoc County endorses the religious message of the Catholic organization.  Manitowoc County Executive Bob Ziegelbauer's public statements only bolster this endorsement that the annual crèche display "looks wonderful" and "puts a little sunshine in all of our lives at this time of the

year." Defendants' Answer at ¶ 30 answering ¶ 30 of Complaint (attached as Ex. A. to Kratz Dec.); Gaylor Dec. Ex. F; Kratz Dec. Ex. L.

Manitowoc County, by permitting and hosting this display each year for the last sixty-two years, "promotes the Christian praise to God that is the crèche's religious message." 492 U.S. at 600. Therefore, this display is a clear, incontrovertible, and unconstitutional endorsement of Christianity by Manitowoc County and further such displays must be enjoined.

III.  **THE MANITOWOC COUNTY COURTHOUSE EXTERIOR GROUNDS DO NOT MEET THE CRITERIA FOR A TRADITIONAL PUBLIC FORUM OR A DESIGNATED (OR LIMITED PURPOSE) PUBLIC FORUM THAT WOULD ALLLOW PRIVATE RELIGIOUS EXPRESSION TO TAKE PLACE.**

While under some circumstances, some federal courts have deemed courthouse lawns to be a type of public forum, the Manitowoc County Courthouse lawn is neither a traditional public forum nor a designated (or limited) public forum.

A.  **Manitowoc County has not created an open public forum on the courthouse lawn.**

 "The right to use government property for one's private expression depends upon whether the property has by law or tradition been given the status of a public forum, or rather has been reserved for specific uses." Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 761 (1995). Three types of forums may exist on government property: traditional public forums, designated or limited public forums, and nonpublic forums. See Good News Club v. Milford Central School, 533 U.S. 98 (2001); Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788 (1985); Perry Educ. Ass'n v. Perry Local Educators Ass'n, 460 U.S. 37 (1983).

The Manitowoc County Courthouse lawn has not met the criteria for a traditional public forum for the simple fact that it is not a place in which all are free to put up displays or engage in other forms of expression.  See Grossbaum v. Indianapolis-Marion County Building Auth., 63 F.3d 581, 586 (7th Cir. 1995)("…the 'traditional public forum' … is a place that 'by long tradition or by government fiat [has] been devoted to assembly and debate.' ")(quoting Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 802 (1985)).  To the contrary, those who wish to do so must obtain the prior approval — whether express or, as in the case of the Catholic groups here, tacit— of the County.  Furthermore, other courts have held that "whether the lawn is or is not a public forum [footnote omitted] is not dispositive" and that the "critical gauge…is whether the overall context and nature" of the display "conveys the impermissible message of governmental endorsement of religion."  Smith v. Albemarle, 895 F.2d at 958.[2]

Likewise, the County has not properly identified its courthouse exterior as a designated or limited public forum.  See Grossbaum, 63 F.3d at 586 ("…a limited or designated public forum, is one 'created by government designation of a place or channel of communication for use by the public at large for assembly and speech…' ").  "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." Cornelius, 473 U.S. at 802.

The County has granted access to its Courthouse exterior only to the Manitowoc County Catholic Woman's Club and the Knights of Columbus. Defendants' Answer at ¶

---

[2] The omitted footnote read: "The front lawn though used for such events as weddings and concerts does not have the traditional indicia of a free speech forum associated with a park."

21, 22 of Complaint (attached as Ex. A to Kratz Dec.); Kratz Dec. Ex. L, O; Gaylor Dec. Ex. F. "…[A] designated public forum (even in the limited purpose variety) cannot be created simply by allowing one private organization access to the forum…" <u>Summum v. Callaghan</u>, 130 F.3d 906, 915 (10th Cir. 1997). Manitowoc County has not created a forum, it has simply endorsed and promoted Christianity during the Christmas season for sixty years running.

Even if this Court concludes that the exterior has been occasionally used for displays other than the crèche, such as for the VFW's flag repository and the Fallen Officer Memorial, "it remains true that any display located there may fairly be understood to express views that receive the support and endorsement of the government." 492 U.S. at 600, n. 50.

**B. Manitowoc County has given perpetual, preferential access to the Courthouse lawn to the Manitowoc County Catholic Woman's Club and the Knights of Columbus for the annual Christian display.**

The Manitowoc County Catholic Woman's Club and the Knights of Columbus have continually been given preferential access to the Courthouse lawn that is unequal to other private groups requesting use of the lawn. There is no approval process, which is required of others, by which the Catholic groups have to abide in order to gain access to the lawn. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2). In fact, the County has given carte blanche approval to the Catholic groups for the annual religious display.

In <u>Pinette</u>, the Supreme Court acknowledged that "religious expression cannot violate the Establishment Clause where it is (1) purely private and (2) occurs in a traditional or designated public forum, publicly announced and open to all on equal terms." <u>Pinette</u>, 515 U.S. at 770. However, the Court also stated,

"Of course, giving sectarian religious speech preferential access to a forum close to the seat of government (or anywhere else for that matter) would violate the Establishment Clause (as well as the Free Speech Clause, since it would involve content discrimination). And one can conceive of a case in which a government entity manipulates its administration of a public forum close to the seat of government… in such a manner that only certain religious groups take advantage of it, creating an impression of endorsement, *that is in fact accurate*." Pinette, 515 U.S. at 766 (emphasis in original).

Manitowoc County routinely allows the Courthouse Nativity scene to be erected and displayed on County property for over a month during the winter holiday season without going through any approval process and without Manitowoc County Catholic Woman's Club or the Knights of Columbus receiving a permit to do so. Defendants' Answer at ¶ 21, 22 answering ¶ 21, 22 of Complaint (attached as Ex. A to Kratz Dec.); Kratz Dec. Ex. L, O; Gaylor Dec. Ex. F. No written request, application, sketch or any other type of description of the display is required to be submitted by either Catholic group to the Public Works Committee even though it is required of any other private organization wishing to do the same. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2).

The Manitowoc County Catholic Woman's Club and the Knights of Columbus have never appeared before the Board or any of its committees to gain the necessary approval for the annual display on County property. Going through an approval process and gaining a permit was not required of the Manitowoc County Catholic Woman's Club or the Knights of Columbus in 1946, the first year the display was erected on the Courthouse lawn. Kratz Dec. Ex. D (Response to Request No. 2). It was not required of the two Catholic groups in the 1990s when the Board allegedly devised the policy requiring a sketch or some sort of description of the display to be submitted to the Public Works Committee before gaining access to the lawn. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2). It was certainly not required of the Manitowoc County Catholic

Woman's Club and the Knights of Columbus in 1993, when Mr. Running, a Manitowoc resident, was required to submit a sketch and get approval for his proposed winter display. Kratz Dec. Ex. E, P. It was not even required of the Catholic groups in 2008, even though FFRF would have been required to submit a sketch or description of the Winter Solstice display well in advance of the display to the Public Works Committee. Gaylor Dec. at ¶ 10, Ex. D, E. The defendants do not have an approval process that applies to the Courthouse Nativity. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2). Instead, the Courthouse Nativity has carte blanche approval. Thus, the County is manipulating its professed "public forum" so that only the Manitowoc County Catholic Woman's Group and the Knights of Columbus are able to take advantage of it. This favoritism and preferential treatment by Manitowoc County elevates, endorses, promotes and advances the Catholic groups and their sectarian religious message. This undeniably and accurately signals endorsement of the Christian message by the County.[3]

---

[3] This preferential access also allows the inference that the question of whether the Courthouse Nativity is really put on by the Manitowoc County Catholic Woman's Club or the Knights of Columbus. Given that the County has not required the Catholic Clubs to submit an application, sketch or receive a permit for this display, one might conclude that the County is responsible for the sole display of a Christian message on Courthouse grounds. Therefore, the County lends its power, prestige and imprimatur to the Courthouse Nativity message and sends an unmistakable message that Manitowoc County embraces the Christian message of salvation through Jesus, and devotionally celebrates his birth and hopes and expects all Manitowoc citizens to do the same. This offends not only FFRF members in Manitowoc County but also the sense of fairness in all who have been given to believe the County and Christianity are united. It harms the standing of non-Christians in the community or even people like the Kjelstrups, who do not object to the County crèche on personal grounds, but because they know it is wrong for their County to endorse, promote and prominently display a devotional Christian message for more than a month every year for years in front of the Courthouse. No one can miss the preferential message of endorsement thereby conveyed.

**IV.** **EVEN IF THIS COURT DEEMED THE COURTHOUSE LAWN TO BE A TYPE OF PUBLIC FORUM, NO DISCERNIBLE STANDARDS EXIST GOVERNING THE APPROVAL AND DISAPPROVAL OF DISPLAYS ON PUBLIC PROPERTY AND THE LACK THEREOF LEADS TO VIEWPOINT DISCRIMINATION.**

Regardless of any "forum" Manitowoc County might disingenuously claim to have established on the Courthouse grounds, the phantom policy the County has in place is not constitutionally sufficient because it lacks any discernible standard by which to guide the Public Works Committee in approvals and disapprovals for any displays on the exterior Courthouse grounds. Thus, Manitowoc County officials are given absolute discretion in determining which speakers have access to the Courthouse grounds. This discretion could lead, and may have already led, to impermissible viewpoint discrimination.

Any government entity opening its property up for expressive activity, and requiring prior approval, must have guidelines for permit seekers to protect them from viewpoint discrimination. The Supreme Court requires, "adequate standards to guide the officials' discretion and render it subject to judicial review." Thomas v. Chicago Park District, 534 U.S. 316, 324 (2002). The Court warned about the lack of sufficient standards to guide an elected official in approving licenses or permits. It stated, "… where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." Thomas, 534 U.S. at 324.

Manitowoc County does not have an approval process that applies to the Courthouse Nativity Scene. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2). The lack of written guidelines governing the permitting process for exterior Courthouse displays gives Manitowoc County officials unbridled discretion in determining what displays may

be placed on the lawn. "…[S]uch 'unbridled discretion' in the hands of government officials 'raises the specter of… viewpoint censorship.' " <u>Summum v. Callaghan</u>, 130 F.3d 906, 919 (10th Cir. 1997).

Manitowoc County cannot grant or deny permits on an ad hoc basis without standards to guide the decision-making process. This arbitrary decision-making process is "inherently inconsistent with a valid time, place, and manner regulations because such discretion has the potential for becoming a means of suppressing a particular point of view." <u>Forsyth County v. Nationalist Movement</u>, 505 U.S. 123, 130 (1992).

The possibility of viewpoint suppression, especially in the context of winter holiday displays, is very real in Manitowoc County where one Board member has already publicly stated he would not allow an atheist sign to be displayed. Gaylor Dec. at ¶ 11, Ex. F. Under the current policy, which contains no standards, the Public Works Committee could reject any request from FFRF or any other atheist, agnostic or skeptic resident in Manitowoc County to put up a Winter Solstice Display. Supervisor Norbert Vogt, who sits on the Public Works Committee, stated publicly that he would have a problem with atheists putting up a sign stating, "There is No God." <u>Id.</u> He further stated that "everybody realizes there is a Supreme Being and it would be unacceptable to have a sign denying that reality." <u>Id.</u> His statements demonstrate the likely inevitability of viewpoint discrimination.

Even assuming, *arguendo*, a standard governing exterior Courthouse displays were similar to the standard governing interior Courthouse displays, such a standard would be unconstitutional. The resolution passed in March 2009 states that if a permit request is denied the applicant will receive "a written statement of the reason that the item was

deemed *inappropriate*." Kratz Dec. Ex. I (emphasis added). This standard also fails constitutional muster. It does not give the permit applicant sufficient direction on what is "appropriate" for the display. Moreover, it still leaves room for significant discretion on the part of government officials. The Constitution does not allow government officials to give perpetual approval to a religious display while holding others to an undefined standard of "appropriateness."

## CONCLUSION

By allowing the Courthouse Nativity scene each year for the past sixty-two years, Manitowoc County has unequivocally conveyed a message of County endorsement of religion, and more specifically, Christianity. Once Manitowoc County enters into the religious business, conferring endorsement and preference for one religion over others, it strikes a blow at religious liberty, forcing County citizens of all faiths and of no religion to support a particular expression of worship.

For all of the above reasons, the plaintiff, Freedom From Religion Foundation requests that summary judgment be granted in its favor.

Dated this 30th day of September, 2009.

/s/ Rebecca S. Kratz

_____

Rebecca S. Kratz, State Bar No. 1063232
Freedom From Religion Foundation
304 W. Washington Ave
Madison, WI 53703
Telephone: (608) 256-8900
Facsimile: (608) 204-0422
rkratz@ffrf.org