UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FREEDOM FROM RELIGION FOUNDATION, INC.,

    Plaintiff,

v.                                                    Case No.: 08-CV-1105

MANITOWOC COUNTY, WISCONSIN
BOB ZIEGELBAUER, Manitowoc County Executive,
And JEFFREY BEYER, Manitowoc County
Public Works Director,

    Defendants.

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

    Plaintiff Freedom From Religion Foundation by its attorney responds to Defendants' Motion for Summary Judgment as follows.

### INTRODUCTION

    Since 1946, Manitowoc County Courthouse has hosted a stand-alone nativity scene displayed on the northeast corner of the Manitowoc County Courthouse lawn each December. The scene is sponsored by the Manitowoc County Catholic Woman's Club and the Knights of Columbus. Manitowoc County ("County") has no records, written or otherwise, showing County approval for this annual display.

Plaintiff Freedom From Religion Foundation filed suit against Defendants' Manitowoc County, Manitowoc County Executive Bob Ziegelbauer, and Manitowoc County Public Works Director Jeff Beyer on December 17, 2008 claiming the display violated the Establishment Clause of the United States Constitution. On September 22, 2009, the Manitowoc County Board belatedly adopted a policy for use of the Courthouse grounds, which governs all displays on the grounds, including the Courthouse Nativity.

Both parties have moved for summary judgment. On September 30, 2009, Plaintiff Freedom From Religion Foundation ("FFRF") filed a motion for summary judgment with this Court. Plaintiff Freedom From Religion Foundation incorporates herein its motion for summary judgment, its Brief in Support, and the Declarations of Paul T. Rappel, Annie Laurie Gaylor, and Rebecca S. Kratz. On October 1, 2009, Defendants Manitowoc County, Bob Ziegelbauer and Jeff Beyer moved for summary judgment in this matter. Defendants argue in support of their motion that the recent enactment of a Courthouse Use Policy renders this action moot, the Plaintiffs lack standing to bring this action and that the Defendants' did not violate the Establishment Clause in continually permitting this display for over sixty years.

The Plaintiff requests that this Court deny the Defendants' motion for summary judgment.

**ARGUMENT**

**I.     RECENT ENACTMENT OF COURTHOUSE USE POLICY DOES NOT MOOT THIS CASE BECAUSE THE POLICY IS UNCONSTITUTIONAL.**

The Defendants' recent enactment of the Courthouse Use Policy, which was adopted on September 22, 2009, just days before summary judgment motions were due in this case, does not render this case moot. The newly drafted and adopted Courthouse Use Policy is unconstitutional, leaving the County with no lawful policy governing unattended displays on

Courthouse grounds, and thus does nothing to eradicate the effects of the stand alone Courthouse Nativity.

- A. <u>This case is not mooted by the enactment of the Courthouse Use Policy because Defendants have not met their burden in showing absolute clarity that the alleged violation will not continue under the new permitting scheme.</u>

Under Article III, a federal court's jurisdiction is limited only to "cases" and "controversies." U.S. Const. art. III, §2, c. 1. A case is moot only when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969).

While a legislative enactment, amendment or other type of governmental policy change may generally moot a case, a defendant's voluntary cessation of a practice through a newly enacted ordinance, regulation or policy renders a claim moot only if "subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." <u>Id.</u> The Supreme Court has announced a stringent standard for determining whether a case is rendered moot by voluntary cessation. The party asserting mootness bears a heavy burden of persuading the Court that there is no reasonable expectation that the challenged conduct will reappear in the future. <u>Friends of the Earth v. Laidlaw Environmental Services, Inc.</u>, 528 U.S. 167, 189 (2000). The Seventh Circuit Court of Appeals also recognizes the "legislative correction" exception to the mootness doctrine when it is absolutely clear that the wrongful conduct cannot recur. See <u>Zessar v. Keith</u>, 536 F.3d 788, 795 (7th Cir. 2008)("when an intervening amendment provides no assurance that the complained-of conduct will cease, the case is not moot.")

Moreover, a court will not find mootness when a newly enacted ordinance, regulation or policy is substantially similar to the challenged or repealed practice. See <u>Fed.'n of Adver. Indus.</u>

Representatives v. City of Chicago, 326 F.3d 924, 930 (7th Cir. 2003); see also Northeastern Fla. Chapter of the Assoc'd Gen. Contractors of Amer. v. City of Jacksonville, 508 U.S. 656, 662 (1993). "Where a superseding statute leaves objectionable features of the prior law substantially undisturbed, the case is not moot… to the extent those [challenged] features remain in place, and changes in the law have not fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." Naturist Soc., Inc. v. Fillyaw, 958 F.2d 1515 (11th Cir. 1992).

The Defendants have not met the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Laidlaw, 528 U.S. at 189. They have not shown or given any assurances that the unconstitutional government endorsement of Christianity which has persisted over sixty years in Manitowoc County will not continue under the new policy. Although Manitowoc County Public Works Director Jeff Beyer admits the County has no records of initial approval of the Courthouse Nativity, he also noted that "there has been no significant changes to the display since the time of the first request" so there is "no need for subsequent reviews and approval." Beyer Aff. at ¶ 11. Under the new policy, permits are given on a "first come, first served" basis, however, Mr. Beyer's statements indicate that Manitowoc County Catholic Woman's Club and the Knights of Columbus do not need to go through the newly enacted permitting scheme.

The policy the County has adopted shows a substantially similar practice to the one before the formal written policy. The Defendants continue to enjoy unfettered discretion in determining what displays are erected on the Courthouse lawn, and are free to continue to give the Manitowoc County Catholic Woman's Club and Knights of Columbus preferential access to the Courthouse lawn in a manner which is unequal to that of others. The unconstitutionality of

the new Courthouse Use Policy leaves the County with no lawful policy governing unattended displays such as the annual Courthouse Nativity. Thus, the status quo remains and this case remains live.

    B. <u>The recently enacted Courthouse Use Policy is unconstitutional because it lacks discernible standards guiding the licensing officials and imposes financial obligations upon permit seekers that unconstitutionally burden First Amendment rights.</u>

The Courthouse Use Policy adopted in September is not constitutionally sufficient because it lacks any discernible standard by which to guide the Public Works Committee in approvals and disapprovals for any displays on the Courthouse grounds. Like the previous practice, under this new policy Manitowoc County officials continue to be given absolute discretion in determining which speakers have access to the Courthouse lawn.

The Supreme Court requires, "adequate standards to guide the officials' discretion and render it subject to judicial review." <u>Thomas v. Chicago Park District</u>, 534 U.S. 316, 324 (2002). Furthermore, "…where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." 534 U.S. at 324. In <u>Thomas</u>, the Supreme Court considered the constitutionality of a Chicago City ordinance, which outlined a permitting scheme for use of Chicago Parks. 534 U.S. at 317. The ordinance allowed permits to be issued on a "first come, first serve" basis. <u>Id</u>. at 318. The ordinance gave thirteen specified grounds on which an application could be denied. <u>Id</u>. The Supreme Court found this permitting scheme, which did not require or authorize the licensor to pass judgment on the content of the speech, constitutional. <u>Id</u>. at 324.

The Supreme Court has further stated,

> "Standards provide the guideposts that check the licensor and allow courts to quickly and easily determine whether the licensor is discriminating against disfavored speech. Without these guideposts, *post hoc* rationalizations by the licensing official and the use of the shifting or illegitimate criteria are far too easy, making it difficult for courts to

5

determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression." City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750 (1988).

To avoid viewpoint discrimination, "… the Constitution requires that [the government] establish neutral criteria to insure that the licensing decision is not based on the content of or viewpoint of the speech being considered." Id. at 760.

In the present case, the Courthouse Use Policy does not provide any guideposts which assure the permit seeker that the decision is not based on the content of the speech. Instead, the policy requires a permit seeker to "provide a description, sketch, or photo of any proposed display, equipment, or other item that will be brought onto courthouse grounds." Ziegelbauer Aff. Ex. B, pg. 6. This requires the applicant to describe in detail the content of their expressive activity prior to approval. Unlike the permitting scheme upheld in Thomas, the Manitowoc County Courthouse Use Policy does not give the applicant any guidance as to why the application may be denied. It simply states that the Public Works Committee will issue a "notice of denial." Id. Furthermore, while the policy states that approval may be granted only if the "item brought onto the courthouse grounds [is] consistent with the decorum due the seat of county government and with the appropriate, non-disruptive use of public property," nothing in the new policy gives the permit applicant sufficient direction on what is "appropriate" for the display. Id. It still leaves room for biased or arbitrary decision-making on the part of government officials.

Moreover, the new Courthouse Use Policy imposes insuperable financial and insurance obligations upon applicants for permits that some applicants cannot satisfy. The Supreme Court has stated, "Speech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob." Forsyth County v. The Nationalist Movement,

505 U.S. 123, 134-134 (1992). "…Courts have not hesitated to strike down regulations that impose prohibitive financial costs on the exercise of First Amendment rights." Coe v. Town of Blooming Grove, 567 F.Supp.2d 543 (S.D.N.Y. 2008)(collecting cases). See also Invisible Empire Knights of Ku Klux Klan v. West Haven, 600 F.Supp. 1427, 1435 (D. Conn. 1985)("It has been well established in recent years that the exercise of fundamental constitutional rights cannot be conditioned upon an individual's wealth.").

The Seventh Circuit has also struck down permitting schemes that require applicants to obtain insurance from private companies to gain access to the public forum for free speech activity. See Collin v. Smith, 578 F.2d 1197 (7th Cir. 1978)(ordinance requiring $300,000 liability and $50,000 property insurance unconstitutional as applied to Nazis unable to obtain private insurance.) Such insurance requirements impermissibly restrict First Amendment activity for "those too controversial to obtain commercial insurance." Id. at 1209. The Courthouse Use Policy requires an applicant to have "insurance coverage of at least $1,000,000 per occurrence for bodily injury and $250,000 per occurrence for property damage." Ziegelbauer Aff. Ex. B, pg. 8. There is no waiver of this requirement based on financial hardship or indigency. Moreover, the new policy does not provide a waiver or other alternatives for those individuals or groups denied coverage by private insurance companies because they have been deemed too controversial. Courts have been reluctant to uphold permitting schemes that exclude such waivers. See Eastern Connecticut Citizens Action Group v. Powers, 723 F2d. 1050, 1052-1053 (2d Cir. 1983).

Manitowoc County has flatly prohibited expressive activity for those groups "too controversial" to obtain private insurance. It even prohibits expressive activity for typical working-class or middle-class citizens in Manitowoc County who could not meet the County's

7

onerous insurance criteria.  The policy presumably was drafted to defer to and cater to the community's political insiders, while leave the rest unable to utilize the space for expressive activity.  This includes any individuals or groups who wish to protest the Courthouse crèche with a counter-protest display.  Such a policy, without waivers for indigency or financial hardship, is unconstitutional.

It is also impermissible to require speakers to prepay costs of police protection based on the content of speech.  See Central Florida Freeze Campaign v. Walsh, 774 F.2d 1515, 1524 (11th Cir. 1985)(City ordinance requiring permit seekers to prepay amount of costs for additional police protection facially violated First Amendment).  Under Manitowoc's new policy, the permit seeker is required to "pay for building security."  Ziegelbauer Aff. Ex. B, pg. 9.

The insurance and hold harmless requirements also force some permit seekers to forgo their right to use the grounds for expressive activity because of an inability to obtain insurance and require the permit seeker to assume responsibility without liability.  Ziegelbauer Aff. Ex. B, pg. 8.  Manitowoc County cannot constitutionally impose these insurmountable financial and insurance obligations upon permit seekers.  To do so results in one permit holder being required to "pay more" for expressive activity than another permit holder.  This is an unconstitutional abridgement of First Amendment rights.

Given that the newly adopted Courthouse Use policy is unconstitutional, the County remains without an approval process governing the Courthouse Nativity display.  Therefore, this present case is not moot and cannot be dismissed.

## II. PLAINTIFF FREEDOM FROM RELIGION FOUNDATION HAS STANDING TO SUE ON BEHALF OF ITS MEMBERSHIP

FFRF as a representative organization has standing to bring this action on behalf of its Manitowoc County members who suffer direct injury as a result of the Defendants' display of

the Courthouse Nativity. Representative standing permits an organization to bring an action on behalf of its members based entirely upon the injuries suffered by its members. See Rockford League of Women Voters v. United States, 679 F.2d 1218, 1221 (7th Cir. 1982)("The standing of an organization is derivative of its members' standing.") "An organization has standing to sue if (1) at least one of its members would otherwise have standing; (2) the interests at stake in the litigation are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires an individual members' participation in the lawsuit." Sierra Club v. Franklin County, 546 F.2d 918, 925 (7th Cir. 2008); see also Pollack v. U.S. Dept. of Justice, -_____ F.3d ____ (7th Cir. 2009) 2009 WL2461398; Disability Rights Wisconsin v. Walworth County, 522 F.3d 796 (7th Cir. 2008). The Supreme Court has required only one member of an organization to be identified in order to establish organizational standing. See Summers v. Earth Island Institute, ____ U.S. ____, 129 S. Ct. 1142, 1151 (2009)("our prior cases… have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm.")

FFRF has standing to sue as an organization because at least one of its Manitowoc County members has standing, the interests at stake in this litigation go to the heart of FFRF's purpose, and the claim asserted does not require the participation by its individual members. FFRF is a national organization with more than 13,900 members across the country, including 1,144 members in Wisconsin. Gaylor Dec. at ¶ 2, 3. FFRF's membership includes Manitowoc County residents. Id. FFRF's primary purpose is to protect the constitutional principle of separation between state and church and to represent the rights and views of nonbelievers. Gaylor Dec. at ¶ 2. FFRF works to achieve those purposes by advocating for and representing its membership in Establishment Clause claims. Gaylor Dec. at ¶ 4, 5. To that end, FFRF has taken

approximately forty lawsuits with and on behalf of its members, including a quarter of those claims involving religious symbols on government property. Gaylor Dec. at ¶ 6. FFRF has identified one of its Manitowoc County members, Paul T. Rappel, who has direct and unwelcome contact with the Courthouse Nativity when it is on display each December. Rappel Dec. at ¶ 1, 2, 8, 10, Ex. D. FFRF had additional members in Manitowoc County who have complained to it about the Catholic Display. Gaylor Dec. at ¶ 7. It has also received requests to sue over the violation from non-members who reside in Manitowoc County. Gaylor Dec. at ¶ 8.

Mr. Rappel meets the requisite requirements for standing. In order to determine whether Mr. Rappel would have standing to sue in his own right, he must satisfy three requirements. "First, [he] must have suffered an 'injury in fact' that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, the injury must be fairly traceable to the challenged action. Third, it must be likely, not just speculative, that a favorable decision will redress the injury." Sierra Club v. Franklin County, 546 F.3d 918, 925 (7th Cir. 2008). Accord Friends of the Earth v. Laidlaw, 528 U.S. at 180-181. "A plaintiff cannot rely on mere allegations but must support each element by specific facts via affidavits or other evidence." Sierra Club v. Franklin County, 546 F.3d at 925.

The Seventh Circuit has consistently held that a plaintiff satisfies "injury in fact" if the plaintiff has had direct and unwelcome contact with the offensive conduct and has assumed special burdens to avoid them. Additionally, "a plaintiff may allege an injury in fact when he is forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to attend the government-owned place where the object is located." Books v. Elkhart, 235 F.3d 295, 301 (7th Cir. 2000). See also Doe v. County of Montgomery, 41 F.3d 1156, 1159 (7th Cir. 1994)("A plaintiff who is subjected to unwelcome religious exercises or is

forced to assume 'special burdens' to avoid them… has demonstrated an 'injury in fact.' "). In Harris v. Zion, 927 F.2d 1401, 1405 (7th Cir. 1991), the Seventh Circuit found a judicially cognizable injury when the plaintiffs in that case altered their normal routines and travel routes to avoid any visual contact with the religious symbols on the city seals. The court stated it was not enough for the plaintiffs to be simply offended by the symbols but the "willingness of the plaintiff to incur a tangible, albeit small cost that validates the existence of genuine distress and warrants the invocation of federal jurisdiction." Id. at 1406. Accord American Civil Liberties Union v. City of St. Charles, 794 F.2d 265, 267 (7th Cir. 1986)(finding plaintiffs met requirements for standing when they "were so offended by the lighted cross that they departed from their accustomed routes of travel to avoid seeing it."); contra Freedom From Religion Foundation, Inc. v. Zielke, 845 F.2d 1463 (7th Cir. 1998)(finding no standing when plaintiffs did not alter their behavior to avoid the Ten Commandments monument in a city park and failed to demonstrate they were exposed to monument during the course of their normal routines.) The extent of the harm is not dispositive in determining standing. "Provided a litigant alleges the existence of a distinct and palpable injury, even a minor injury can satisfy the case or controversy requirement of Article III." Freedom From Religion Foundation v. Zielke, 845 F.2d at 1467.

     Mr. Rappel easily meets the requisite requirements for standing in this action. He has suffered a concrete and particularized injury that is traceable to the Defendants' approval and hosting of the Courthouse Nativity and this Court's favorable decision will redress his injury. Mr. Rappel has suffered a distinct and palpable injury through the Defendants' annual display of the inherently religious symbol. He submitted to this Court a declaration stating that he is a resident of Manitowoc County who has observed the nativity scene each year on the lawn of the

Courthouse. Rappel Dec. at ¶ 1, 2, 4. Mr. Rappel must drive past the Courthouse each day on his way to work and thus has direct and unwelcome contact with the display. Rappel Dec. at ¶ 8. He declared that he avoids the Courthouse Nativity by taking an alternative route to work. Id. He further stated that sometimes he is unable to avoid the Courthouse Nativity. Id.

FFRF brings this action on behalf of its Manitowoc County members, including Paul T. Rappel, who are injured by the nativity display. Accordingly, FFRF has representative standing to challenge the constitutionality of the nativity scene at the Manitowoc County Courthouse. FFRF also has organizational standing to challenge the standardless approval process required for displays.

### III. A STAND-ALONE NATIVITY PLACED IN A PROMINENT LOCATION AT A CORE GOVERNMENT BUILDING IS UNCONSTITUTIONAL.

Despite the Defendants' assertions, the Courthouse Nativity scene — standing alone on the northeast corner of the Courthouse lawn — is an unconstitutional display. Federal courts have almost unanimously agreed that a sole display of an inherently religious symbol, particularly a crèche scene, at a core government building is unconstitutional because it conveys a message of government endorsement of religion, and in the context of a nativity display, government endorsement of Christianity. See County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U.S. 573 (1989)(holding that the crèche display on the Grand Staircase of the Allegheny County Courthouse violated the Establishment Clause); Smith v. County of Albemarle, 895 F.2d 953 (4th Cir. 1990)(held the display of a nativity scene on the lawn of a courthouse unconstitutional even in the context of a public forum); American Jewish Congress v. City of Chicago, 827 F.2d 120 (7th Cir. 1987)(holding a stand alone crèche display at city hall unconstitutional); American Civil Liberties Union v. City of Birmingham, 791 F.2d 1561 (6th Cir. 1986)(holding that display of crèche in prominent position on lawn of city hall

violated the Establishment Clause); Burelle v. City of Nashua, 599 F.Supp. 792 (D.C.N.H. 1984)(held that sole crèche display on city hall plaza was unconstitutional and warranted an injunction against the license to a private organization maintaining the display); American Civil Liberties Union of Central Ohio v. County of Delaware, 726 F. Supp. 184 (S.D. Ohio 1989)(Nativity scene on Courthouse lawn found unconstitutional).

In all of the cases upon which the Defendants' rely, the holiday displays were deemed constitutional because the crèche scenes were included as part of larger holiday displays including many other secular holiday decorations. See Lynch v. Donnelly, 465 U.S. 668 (1984)(nativity scene on display with Santa, reindeer, tree, carolers, cut out figurines, candy-striped poles, and banner reading "Seasons Greetings"); Mather v. Village of Mundelein, 864 F.2d 1291, 1292 (7th Cir. 1989)(nativity scene on display with Christmas lights, evergreens, a wreath, banner, Santa Clause and sleight, carolers, snowmen, carriage lights, wreaths and two nutcracker soldiers). Even in Mather v. Mundelein, the Seventh Circuit noted that the crèche displayed as part of a larger holiday celebration was distinguishable from the one the court struck down as unconstitutional in American Jewish Congress v. City of Chicago because that "display of an isolated religious symbol at the center of government unavoidably demonstrated the city's support for that religion, in violation of the Establishment Clause." 864 F.2d at 1292.

Defendants apparently believe that Lynch allows Manitowoc County to host the Courthouse Nativity by itself at the seat of County government so long as the entire City of Manitowoc includes other secular decorations. Defendants point to other holiday decorations placed by the County, not by the Roman Catholic groups, on the *inside* of the Courthouse such as a Christmas tree, garland and banners placed by the City of Manitowoc throughout the city, and pretend those holiday decorations to be part of the same holiday display as the nativity. Beyer

13

Aff. at ¶ 16.  In American Jewish Congress v. City of Chicago, the Seventh Circuit refused to agree that secular decorations throughout City Hall and the City constituted the same holiday display. 827 F.2d at 125-126 ("secularized decorations in the vicinity of the nativity scene were not clearly part of the same display.")  The Supreme Court in Allegheny did not even consider the crèche display to be part of the same display as other decorations in the building.  492 U.S. at 598, n.48. ("The presence of Santas or other Christmas decorations elsewhere in the county courthouse, and of the nearby gallery forum, fail to negate the endorsement effect of the crèche. The record demonstrates clearly that the crèche, with its floral frame, was its own display distinct from any other decorations or exhibitions in the building").

Defendants assert that Christmas is a public holiday in Manitowoc County.  Aff. Ziegelbauer at ¶ 7.  They argue that any reasonable observer would understand that the crèche is part of the public holiday celebration.  Def. Brief pg. 35.  This argument was summarily rejected in Allegheny.  The Court in that case stated,

> "Finally, the county argues that it is sufficient to validate the display of the crèche on the Grand Staircase that the display celebrates Christmas, and Christmas is a national holiday.  This argument obviously proves too much.  It would allow the celebration of the Eucharist inside a courthouse on Christmas Eve.  While the county may have doubts about the constitutional status of celebrating the Eucharist inside the courthouse under the government auspices, this Court does not.  The government may acknowledge Christmas as a cultural phenomenon, but under the First Amendment it may not observe it as a Christian holy day by suggesting people praise God for the birth of Jesus." 492 U.S. at 601.

There, the Supreme Court held that the county could not celebrate the holiday in a manner that endorses the Christian doctrine.  A stand-alone nativity scene endorses the Christian doctrine. Similarly, the fifteen foot wide stand-alone Courthouse Nativity with three to four feet tall figurines placed twenty feet from the Courthouse entrance constitutes an unconstitutional endorsement of Christianity by Manitowoc County.

Finally, the Defendants' reliance on Lynch is misplaced. Lynch upheld the display of the nativity scene only because it was displayed in the context of a larger holiday display. Pawtucket's relatively tiny nativity display dwarfed by an entire city block of lighted secular holiday displays was deemed constitutional when viewed in the "context of the Christmas season." Lynch, 465 U.S. at 679.

Defendants' also unpersuasively argue that the context of the Courthouse Nativity is similar to the Texas Capitol grounds in Van Orden v. Perry, 545 U.S. 677 (2005). In Van Orden, the Supreme Court upheld the display of a Ten Commandments monument on the grounds of the Texas State Capitol. This permanent monument stands alongside seventeen monuments, which primarily consist of monuments commemorating Texas history and war memorials, and twenty-one historical markers. Van Orden, 545 U.S. at 681. Unlike the plethora of monuments decorating the grounds at the Texas capitol, Manitowoc County only has three permanent monuments — the Fallen Officers Memorial, which sits between the Courthouse and the Jail, the Salomon Brothers monument on the northeast corner of the lawn, and the Flag Retirement Depository, which is a converted U.S. mailbox. Beyer Aff. at ¶ 8. The other historical markers and plaques — notably three plaques for memorial trees, and at least five flagpoles and accompanying plaques, and historical markers identifying the Courthouse and other government buildings and offices — do not create the historical commemoration context present in Texas. The displays, memorials and other items in the interior of the Courthouse are irrelevant because they cannot possibly be deemed part of the same display as the Courthouse Nativity. Instead, Manitowoc County hosts a single nativity scene on the lawn each December. The solitary display of a religious symbol has never been upheld. In fact, in McCreary v. American Civil Liberties Union, 545 U.S. 844 (2005), another Ten Commandments monument case decided the

same day as Van Orden, the Supreme Court struck down the solitary display of a religious symbol. The Court stated, "When the government initiates an effort to place [a religious symbol] alone in public view, the religious object is unmistakable." McCreary, 545 U.S. at 869. The Courthouse Nativity display is intended solely to commemorate the birth of a Christian god. Its display, alone in public view on the Courthouse grounds, unmistakably conveys a message of endorsement of one religion, Christianity, over others, and of religion over nonreligion.

It simply cannot be argued, as the Defendants do, that an inherently Christian symbol becomes "secular" because it sits in proximity near other permanently displayed secular monuments and displays having nothing to do with the Christmas holiday season such as the Fallen Officers Memorial, a Flag Retirement Depository, and numerous historical plaques and flagpoles. The other exterior holiday decorations, primarily consisting of streetlight banners, cannot possibly be viewed as part of the same display. Rather, hosting a stand-alone nativity scene during December each year at the seat of county government sends the "unmistakable message that [Manitowoc County] supports and promotes the Christian praise to God that is the crèche's religious message." Allegheny, 492 U.S. at 600.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment should be denied.

Dated this 31st day of October, 2009.

/s/ Rebecca S. Kratz
_____

    Rebecca S. Kratz, Staff Attorney
    State Bar No. 1063232
    Freedom From Religion Foundation
    P.O. Box 750

Madison, WI 53701-0750
Telephone: (608) 256-8900
Facsimile: (608) 204-0422
rkratz@ffrf.org