UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FREEDOM FROM RELIGION FOUNDATION, INC,

     Plaintiff,

v.                                       Case No.: 08-cv-1105

MANITOWOC COUNTY, WISCONSIN
BOB ZIEGLEBAUER, Manitowoc County Executive,
And JEFFREY BEYER, Manitowoc County
Public Works Director,

     Defendants.

**PLAINTIFF'S RESPONSE TO MANITOWOC COUNTY, BOB ZIEGLEBAUER
AND JEFF BEYER'S PROPOSED FINDINGS OF FACT IN SUPPORT OF ITS
BRIEF FOR SUMMARY JUDGMENT**

Manitowoc County, Bob Ziegelbauer and Jeffery Beyer submitted a Proposed

Findings of Fact in Support of its Brief for Summary Judgment. The Plaintiff's reply to

the Proposed Findings of Fact is as follows:

1. In this 42 U.S.C. Sec. 1983 Civil Rights action, the Court has jurisdiction over

this matter pursuant 28 U.S.C. Sec. 1331 and 1343 (a)(3) and (4) regarding federal

questions arising under the First and Fourteenth Amendments to the United States

Constitution.

**RESPONSE:** This statement is not disputed.

2. The Eastern District of Wisconsin is the proper venue for this action pursuant to

28 U.S.C. Sec. 1391 (b) because the alleged events giving rise to the claims occurred in

Manitowoc County in the Eastern District of Wisconsin.

1

**RESPONSE:** This statement is not disputed.

3. FFRF is the only plaintiff in this lawsuit. See Complaint.

**RESPONSE:** This statement is not disputed.

3. FFRF seeks declaratory and injunctive relief. See Complaint ¶ 4.

**RESPONSE:** This statement is not disputed.

4. FFRF does not seek monetary relief. See Complaint p. 10.

**RESPONSE:** This statement is not disputed.

5. FFRF's Complaint does not identify any injury to FFRF. See Complaint generally.

**RESPONSE:** This statement is **disputed**. FFRF is a representative organization, which has standing to bring this action on behalf of its Manitowoc County members who suffer direct injury as a result of Defendants' display. As discussed in Plaintiff's Response Brief attached hereto (pgs. 8-12), representative standing permits an organization to sue on behalf of its members based entirely upon injuries suffered by its members.

6. FFRF is an association with members, including from Manitowoc County, opposed to government endorsement of religion. Complaint ¶¶ 4-6.

**RESPONSE:** This statement is not disputed.

7. Unspecified individuals wrote letters to local newspapers complaining about the display and that that the display is "provocative and divisive." Complaint ¶¶ 33, 35, 37.

**RESPONSE:** This statement is not disputed.

8. Plaintiff's Rule 26(a)(1) disclosures identify three of these letter-writers, but the editorials attached to the disclosures show nothing more than dislike for the display and

their personal views on the Establishment Clause. Aff. Bitar, Exh. A.

**RESPONSE:** This statement is **disputed**. The individual letters show that community members are offended by the nativity scene. At least one of these individuals has altered their behavior in order to avoid the nativity scene. The letters further show that these individuals believe that a nativity scene on the courthouse lawn sends a message that Manitowoc County promotes Christianity. Gaylor Dec. at ¶ 7,8, Ex. A, B; Rappel Dec. at ¶ 9, 10, Ex. D.

9. Of the three alleged letter-writers, at least one – Robert Norlander – identifies his residence as Menasha, Wisconsin, which means he is not even a Manitowoc County resident. Aff. Bitar, Exh. A.

**RESPONSE:** This statement is not disputed.

10. Since August 1986, Defendant Jeffery Beyer has been the Manitowoc County Public Works Director and has been employed with Manitowoc County since November 1985, beginning in the Waste and Recycling Management Department. Aff. Beyer ¶ 3.

**RESPONSE:** This statement is not disputed.

11. Defendant Bob Ziegelbauer has been the Manitowoc County Executive since 2006, and previously served on the Manitowoc City Council between 1981 and 1984 and on the Manitowoc County Board between 1982 and 1988. Aff. Ziegelbauer ¶ 2.

**RESPONSE:** This statement is not disputed.

12. Missing from Defendants' Proposed Findings of Fact.

13. Freedom From Religion Foundation, Inc. ("FFRF" or "Foundation") commenced this lawsuit against Manitowoc County, Manitowoc County Executive Bob Zieglebauer and Manitowoc County Public Works Director Jeffery Beyer alleging

violations of the Establishment Clause of the First Amendment of the United States Constitution and 42 U.S.C. § 1983. Complaint ¶ 1.

**RESPONSE**: This statement is not disputed.

14. The controversy at issue in this case is a Nativity scene ("crèche") located at the northeast corner of the Manitowoc County Courthouse lawn. Complaint ¶ 15.

**RESPONSE**: This statement is not disputed.

15. The Nativity scene depicted the birth of Jesus Christ and includes figurines representing Jesus, Mary, Joseph, a Shepherd, a camel, four lambs and a ram and a blond-haired angel with a sign stating, "Gloria in excelsis Deo" ("Gloria to God in the Highest"). Complaint ¶ 16-17.

**RESPONSE**: This statement is not disputed.

16. The Manitowoc County Catholic Women's Club erected the display. Complaint ¶ 22.

**RESPONSE**: This statement is not disputed.

17. The display was erected during the last week of November 2008 through approximately January 10, 2009. Complaint ¶ 18.

**RESPONSE**:  This statement is not disputed.

18. The display has appeared on the Courthouse lawn since 1946. Complaint ¶ 21.

**RESPONSE**: This statement is not disputed.

19. Manitowoc County has an area of 594 square miles and the 2008 final estimate of its final population was 84,830. Aff. Beyer ¶ 4.

**RESPONSE**: This statement is not disputed.

20. The Courthouse is located in the City of Manitowoc, which according to the

2000 census, had a population of 34,053, with over 50,000 residents in the surrounding communities. Aff. Beyer ¶ 4.

      **RESPONSE**: This statement is not disputed.

      21. In the State of Wisconsin and nationally, Manitowoc County's reputation includes manufacturing cranes, ship-building and, during World War II, the building of 28 U. S. Navy submarines. Aff. Beyer ¶ 4.

      **RESPONSE**: This statement is not disputed.

      22. The Manitowoc County Courthouse sits on five city lots along with two additional lots for parking. Aff. Beyer ¶ 5.

      **RESPONSE**: This statement is not disputed.

      23. The Manitowoc County Courthouse, which was built in 1906, was listed on the National Register of Historic Places by the Secretary of the Interior on April 16, 1981. Aff. Beyer ¶ 5.

      **RESPONSE**: This statement is not disputed.

      24. The Courthouse style is a Beaux Arts Neoclassical design. Aff. Beyer ¶ 5.

      **RESPONSE**: This statement is not disputed.

      25. On the Courthouse grounds, in addition to the Courthouse, there is one other building (the Public Health Building). Aff. Beyer ¶ 6.

      **RESPONSE**: This statement is not disputed.

      26. An abandoned street cuts across the Courthouse grounds and separates the Courthouse grounds from the County Sheriff's Department and the County Jail facilities. Aff. Beyer ¶ 6.

      **RESPONSE**: This statement is not disputed.

27. The Courthouse facilities include the departments of the Treasurer, County Executive, Corporation Counsel, Child Support Agency, the Information Systems Department, the Family Court Commissioner, the Circuit Court Clerk, the County Clerk, the Register of Deeds, Probate and the District Attorney's Office. Aff. Beyer ¶ 7.

**RESPONSE**: This statement is not disputed.

28. Additionally, the courthouse contains facilities for the three branches of the Manitowoc County Circuit Court. Aff. Beyer ¶ 7.

**RESPONSE**: This statement is not disputed.

29. The County has a number of permanent displays on the Courthouse grounds. Permanent displays include plaques and stones. Aff. Beyer ¶ 8.

**RESPONSE**: This statement is not disputed but the Plaintiff noted only three permanent monuments on the Courthouse grounds. Aff. Beyer at ¶ 8. Other displays listed include primarily plaques designating memorial trees, historical markers and building designations and flagpoles. Id.

30. There is also a law enforcement memorial for "Fallen Officers." Aff. Beyer ¶ 8.

**RESPONSE**: This statement is not disputed.

31. In addition, a veteran's group placed a drop box, known as the "Flag Retirement Depository," on the courthouse grounds which allows persons to dispose of American flags. Aff. Beyer ¶ 8.

**RESPONSE**: This statement is not disputed.

32. The following is a full listing of all permanent memorials, displays, and plaques on the Courthouse grounds:

• Salomon Brothers Monument on the northeast lawn. It reads: "In memory of

6

four brothers residents of Manitowoc, distinguished for service in the Civil War. Chase. E. Salomon, Brig. Gen. U. S. Army; Fred Solomon, Maj. Gen. U. S. Army; Edward Salomon, Gov. of Wisconsin 1862-1864; and Herman Salomon, Sgt. Co. I, 1st MO. Engineers, U. S. Army." This large granite bolder measures 8 feet in length by 3 ½ feet thick and 6 ½ feet high and weighs approximately 27 tons.

• Grand Army of the Republic plaque / ground marker on the southeast lawn. It reads: "Memorial Tree Planted in Honor of the Grand Army of the Republic by its auxiliary the National Woman's Relief Corps."

• U.S. American Legion plaque/ground marker and flag pole on the northeast lawn. It reads: "This Tree Planted in Memory of Our Fallen Comrades of the World War for God and County"

• U.S. Veterans of Foreign Wars plaque/ground marker on a narrow strip of lawn between a concrete sidewalk that leads up to the north side of the courthouse and a parking lot on the west side. It reads: "This Tree Planted in Memory of Our Fallen Comrades of the World Wars for God and Country OTTO OAS Post 659 & AUX. 1975."

• Corner Flagpole marker recognizing all U.S. Veterans

• Manitowoc County Police Officers Memorial. It reads as follows: "Dedicated to our fallen comrades. May their efforts never be forgotten." It identifies seven police officers killed while on duty.

• Historical District marker / Plaque on east entrance describing the courthouse

• Historical District marker / Plaque on north side of Health Department Bulding

describing the building as the Alf Muchin Building

• Corner Flagpole

• Courtyard - 3 Flagpoles are located on the abandoned street that cuts across the
Courthouse ground and separates the courthouse from the County Sheriff's
Department and the County Jail facilities. Aff. Beyer ¶ 8.

**RESPONSE:** This statement is not disputed.

33. The County has had occasions where other temporary displays have been
allowed on the courthouse grounds. Aff. Beyer ¶ 9.

**RESPONSE:** This statement is not disputed.

34. A United Way Fund Drive Sign goes up after September 1st and comes down
by December 31st; the sign is a fundraising "thermometer" that displays their success on
fundraising for that organization. Aff. Beyer ¶ 9.

**RESPONSE:** This statement is not disputed.

35. The lobby of the courthouse also includes candy machines from the Kiwanis
organization and from the National Kidney Foundation. Aff. Beyer ¶ 9.

**RESPONSE:** This statement is not disputed.

36. The following is a listing of the displays, memorials and other items in the
interior of the courthouse:

• Courthouse National Register of Historical Places plaque

• 2006 Proclamation from the State of Wisconsin designating 2006 the History
Year for the Courthouse

• AFSCME Local 986-A Posting Board

• Sesquicentennial Quilt display

8

• (6) 4'x8' Historic photos and descriptive plaques for each.

• (5) Rohrbeck Murals

• The 4 Medallion Murals and the Manitowoc County Rapids Mural

• Biberstein Mural

• The Roefes Hill Mural

• State of Wisconsin Motto painting

• A County Flag

• Red, White, & Blue buntings

• Manitowoc County Mission / Values / Vision Statement

• Sheriff's Sale / Foreclosure notices display cabinets

• Meeting Notices

• Building Directory

• Juror Appreciation Month Poster

• Clerk of Court General Information Postings outside Room B-15

**RESPONSE:** This statement is not disputed.

37. The Catholic Women's Club has put up the Nativity scene on the front lawn of the courthouse since 1946. Aff. Beyer ¶ 10; Aff. Ziegelbauer ¶ 3.

**RESPONSE:** This statement is not disputed except that the Knights of Columbus have also erected the nativity scene in years since 1946. Kratz Dec. Ex. O; Gaylor Dec. Ex. F.

38. On the top of the display is a sign that reads "CHRISTMAS BLESSINGS"and below those two words it states "Donated by Manitowoc County Catholic Women's Club." Aff. Beyer ¶ 10; Aff. Ziegelbauer ¶ 3.

9

**RESPONSE**: This statement is **disputed** in part. The wording of the sign is inaccurate. The signs actually reads, "CHRISTMAS BLESSINGS" and below those words reads "Sponsored by Manitowoc County Catholic Woman's Club." Rappel Dec. at ¶ 7, Ex. B.

39. An angel in the display has a sign stating, "Gloria in excelsis Deo" ("Gloria to God in the Highest"), but that language – due to wear and tear and its small size – is hardly visible from a distance as compared to the larger sign on the display itself. Aff. Beyer ¶ 10; Aff. Ziegelbauer ¶ 3.

**RESPONSE**: This statement is **disputed**. The phrase "hardly visible" states the opinions of Mr. Beyer and Mr. Ziegelbauer.

40. For example, from across the street, the Salomon memorial stands out against the Nativity scene and only the "CHRISTMAS BLESSINGS"text can be read. Aff. Beyer ¶ 10; Aff. Ziegelbauer ¶ 3.

**RESPONSE**: This statement is **disputed**. The view of the nativity scene and the signs accompanying the display are characterized here through the opinions of Mr. Beyer and Mr. Ziegelbauer.

41. From the adjacent sidewalk, the text "CHRISTMAS BLESSINGS" may become more visible but the text on the angel still remains difficult to read. Aff. Beyer ¶ 10; Aff. Ziegelbauer ¶ 3.

**RESPONSE**: This statement is **disputed** for the same reasons as noted in response to Statement No. 40.

42. Even being a few feet away does not bring the language on the angel into clear focus. Aff. Beyer ¶ 10; Aff. Ziegelbauer ¶ 3.

**RESPONSE**: This statement is **disputed** for the same reasons as noted in response to Statement No. 40.

43. The figurines in the display are approximately 3 to 4 feet tall and the display itself is approximately 15 feet wide by 8 to 10 feet deep. Aff. Beyer ¶ 10; Aff. Ziegelbauer ¶ 3.

**RESPONSE:** This statement is not disputed.

**44.** The foregoing visual description is supported by the following video coverage by local media of the nativity display in December 2008: http://www.wwlp.com/dpp/news/national/midwest/nat_wluk_manitowoc_navitity_lawsuit_2008 12171759_rev12134248. Aff. Beyer ¶ 10; Aff. Ziegelbauer ¶ 3.

**RESPONSE:** This statement is not disputed.

45. The Catholic Women's Group sought approval to put a Nativity scene on the Courthouse grounds in 1946. Aff. Beyer ¶ 11.

**RESPONSE**: This statement is **disputed**. Manitowoc County, specifically the Public Works Committee, which purports to review and approve displays on the exterior of the courthouse, has no records showing approval or a permit for the Manitowoc County Catholic Woman's Club display dating back to 1946 or any subsequent years. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2); Beyer Aff. at ¶ 11; Def. Brief in Support of Summary Judgment Motion pg. 5, n. 2.

46. The County Public Works Director has not been able to locate any Public Works Committee minutes pertaining to the initial approval for this display. Aff. Beyer ¶ 11.

**RESPONSE:** This statement is not disputed.

47. Manitowoc County did not seek to promote the religious content of this Nativity scene. Aff. Beyer ¶ 11; Aff. Ziegelbauer ¶¶ 5, 7.

**RESPONSE**: This statement is **disputed**. Manitowoc County Executive Bob Ziegelbauer has made public statement promoting the nativity scene and has stated it "looks wonderful." Kratz Dec. Ex. L; Defendants' Answer at ¶ 30 answering ¶ 30 of Complaint (attached as Ex. A to Kratz Dec.); Gaylor Dec. Ex. F. Furthermore, County Board Supervisor Norbert Vogt, who sits on the Public Works Committee stated publicly when interviewed about the nativity scene that "everybody realizes there is a Supreme Being." Gaylor Dec. Ex. F.

48. Since there have been no significant changes to the display since the time of the first request, there has been no need for subsequent reviews and approval and the display goes up every year in late November and remains up until sometime in early January. Aff. Beyer ¶ 11; Aff. Ziegelbauer ¶ 5.

**RESPONSE**: This statement is **disputed**. Manitowoc County does not have any records to show that approval was made. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2). Beyer Aff. at ¶ 11; Def. Brief in Support of Summary Judgment Motion pg. 5, n. 2. Furthermore, there is no indication that other group with temporary displays are given the same carte blanche approval.

49. The County is not involved in setting up or taking down the Nativity display. Aff. Beyer ¶ 12.

**RESPONSE:** This statement is not disputed.

50. The Catholic Women's Club constructed the display and they maintain the display. Aff. Beyer ¶ 12.

**RESPONSE:** This statement is not disputed.

51. The Catholic Women's Club stores the display the remainder of the year. *Id*. There is no County lighting on the display. *Id*.

**RESPONSE**: This statement is not disputed.

52. No public funds are used for the display. *Id*. See also Aff. Ziegelbauer ¶ 3.

**RESPONSE:** This statement is not disputed.

53. The Catholic Women's Club places the display at the northeast corner of the Courthouse facing Washington Street, between the sidewalk and the County Courthouse. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is not disputed.

54. The Nativity scene is approximately 75' from the Salomon Memorial and about 20' from the North Courthouse entrance. Aff. Beyer ¶ 13.

**RESPONSE:** This statement is not disputed.

55. The display is not in the most prominent place on the grounds. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is **disputed**.  The nativity scene is located by an entrance to the courthouse and is visible from the road.  See Kratz Dec. Ex. O; Gaylor Dec. Ex. F.  This location is a prominent place on the courthouse grounds of this core government building, which includes important County government offices.  Beyer Aff. at ¶ 7.

56. There are a total of four Courthouse entrances for the public. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is not disputed.

57. The most heavily used entrance is the Southeast entrance, which is at the opposite side of the Courthouse from the Nativity scene. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is not disputed.

58. The main grounds are in front of the Courthouse which contain 2 large oval sections of grass between the steps and the concrete sidewalk. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is not disputed.

59. The dome is the focal point of the building when viewed from the immediate neighborhood and from far away. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is not disputed.

60. No events, programs, activities or other events are planned around the Nativity scene by the County at any time. Aff. Beyer ¶ 14.

**RESPONSE**: This statement is not disputed.

61. The Catholic Women's Club does not have any planned activities at the Nativity scene. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is not disputed.

62. There are no press releases by the County concerning the Nativity scene. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is not disputed.

63. The Catholic Women's Club does not issue any press releases concerning the Nativity scene. **Aff. Beyer ¶ 13**.

**RESPONSE**: This statement is not disputed.

64. There are no unveiling ceremonies for the Nativity scene nor are there any blessings, speeches or other communications made by the clergy or the County concerning the Nativity scene. Aff. Beyer ¶ 15.

**RESPONSE**: This statement is not disputed.

65. There are no benches, chairs or other seating by the Nativity scene. Aff. Beyer ¶ 13.

**RESPONSE**:  This statement is not disputed.

66. Nor does the County (or the Women's Club) have any other fixtures or devotional trappings which invite veneration of the Nativity scene. Aff. Beyer ¶ 13.

**RESPONSE**: This statement is not disputed except that the crèche scene depicts the birth of a Christian god and is a devotional symbol.  "The essence of the crèche's symbolic purpose and effect is to prompt the observer to experience a sense of simple awe and wonder appropriate to the contemplation of one of the central elements of Christian dogma- that God sent His son into the world to be a Messiah" Lynch v. Donnelly, 465 U.S. 668, 711-712 (1984)(Brennan, J., dissenting).

67. There are no displays presented for other Christian holidays. Aff. Beyer ¶ 16.

**RESPONSE**: This statement is not disputed.

68. The interior of the Courthouse does not have religious symbols.  At Christmas, the County places a Christmas tree and garland in the Courthouse lobby and the City hangs 22 banners with non-religious wording around the Courthouse grounds and/or on street lamp posts adjacent to or nearby the Courthouse. Aff. Beyer ¶ 16.

**RESPONSE**: This statement is not disputed, except that one banner has religious wording.  See response to Statement No. 69.

69. Those banners include: (1) green banners with the words "Frosty," "Goodwill," "HoHoHo," "Holiday," "Joy," "Merry," "Season," "Sparkle," "Spirit," "Star," and "Wish"; and (2) red banners with the words "Carol," "Cheer," "Holly," "Jingle," "Jolly," "Miracle," "Ribbon," "Santa," "Tinsel," "Wreath," and "Yule."Aff. Beyer ¶ 16.

**RESPONSE**: This statement is not disputed except that the term "Miracle" is a religious term.

70. The red and green banners alternate randomly; they have no assigned location. Aff. Beyer ¶ 16.

**RESPONSE**: This statement is not disputed.

71. The Nativity scene at issue in this case has been displayed on the Courthouse grounds since 1946 without controversy until the 2007 holiday season when the Freedom From Religion Foundation sent a letter to the County Executive and members of the County Board complaining about the Nativity scene. Aff. Beyer ¶ 17.

**RESPONSE**: This statement is **disputed** in part. The lack of a formal written letter prior to the letter from FFRF dated 2007 does not mean that the nativity scene was displayed without controversy prior to that date. In fact, the County meeting minutes from February 1993 show that a resident wanted to counter the nativity display with a "Winter Solstice" display. See responses to Statements No. 74-75.

72. No state or federal complaints have been filed against the County, the Public Works Department or its employees relating to such displays. Aff. Beyer ¶ 17.

**RESPONSE**: This statement is not disputed.

73. Nor have any claims been filed against these entities pursuant to Wis. Stat. § 893.80 concerning the subject matter of this lawsuit. Aff. Beyer ¶ 17.

**RESPONSE**: This statement is not disputed.

74. In 1993, an individual questioned whether another display could be posted on the Courthouse besides the Nativity scene. Aff. Beyer ¶ 17.

**RESPONSE**: This statement is not disputed.

75. That occasion arose on or about February 2, 1993 and the Public Works Committee responded that such a display would be permissible if a sketch was provided. Aff. Beyer ¶ 17. See Aff. Beyer, Exh. C.

**RESPONSE**: This statement is **disputed** in part. The individual was told a sketch must be provided before a decision would be made. Kratz Dec. Ex. E, P.

76. However, the Public Works Committee never heard back from this gentlemen. Aff. Beyer ¶ 17.

**RESPONSE**: This statement is not disputed.

77. There have been no written complaints about the Nativity scene until some of the editorials surrounding the display in December 2008. Aff. Beyer ¶ 17.

**RESPONSE:** This statement is not disputed.

78. None of the remaining monuments and displays outside or inside the Courthouse are religious or have religious symbols. Aff. Beyer ¶ 18.

**RESPONSE**: This statement is **disputed** but not material. Some of the displays, such as the memorial in the courtyard, contain language "God and Country."

79. Two frame murals are the on west landing between the second and third floors of the Courthouse. Aff. Beyer ¶ 17.

**RESPONSE**: This statement is not disputed

80. The mural on the south wall, by Franz Rohrveck, depicts the first courthouse and jail at Manitowoc Rapids in 1840. Aff. Beyer ¶ 17.

**RESPONSE**: This statement is not disputed

81. The mural on the opposite, or north, wall depicts a panoramic view of Manitowoc from Roefes Hill looking north in 1882, which was painted by Frank

Biberstein. Aff. Beyer ¶ 17.

   RESPONSE: This statement is not disputed.

   82. No murals or paintings are present in the 20 plaster-framed wall areas that remain in courthouse corridors. Aff. Beyer ¶ 17.

   RESPONSE: This statement is not disputed.

   83. In addition, there are 18 somewhat similar, but wood, framed panels that are placed high up on the walls in the large Branch 2 courtroom, although none of these framed wall areas appeared to ever been painted with murals. Aff. Beyer ¶ 17.

   RESPONSE: This statement is not disputed.

   84. Although the County has allowed the Courthouse grounds for public expression, the County previously had no written policies regarding the use of the courthouse grounds for displays, but did have general policies and procedures on employee use of the courthouse, such as scheduling rooms and "after hours use." Aff. Beyer ¶ 19.

   RESPONSE: This statement is **disputed** in part. These policies were not adopted until March 2009, and govern only the interior of the courthouse. Kratz Dec. Ex. I.

   85. However, the County has recently enacted policies on use of the courthouse grounds for displays. Aff. Beyer ¶ 19. See also Aff. Ziegelbauer ¶ 8 and Exh. B thereto.

   RESPONSE: This statement is not disputed.

   86. On September 22, 2009, the Manitowoc County Board of Supervisors approved the Manitowoc County Courthouse Policies and Procedures for Courthouse Grounds use, Application and Permit. Aff. Ziegelbauer ¶ 8.

   RESPONSE: This statement is not disputed.

87. The Courthouse Grounds Use policies and procedures seek to provide all citizens with equal access to the courthouse grounds, which can be used for a multitude of purposes. Aff. Ziegelbauer ¶ 8, Exh. B (see policy p. 1).

**RESPONSE**: This statement is **disputed**. As discussed in Plaintiff's Response Brief, pg. 5-8, the new Courthouse Use policy lacks discernible standards. Regardless of the intent of the policy, the lack of guidelines governing the licensor leads to the potential for viewpoint discrimination. Thus, the grounds are not open to all citizens on an equal basis.

88. "The decision to issue a permit for use of the courthouse grounds will be made on a nondiscretionary basis and will not be based on the religious or political content of the activity, display, or exhibit." Aff. Ziegelbauer ¶ 8, Exh. B (see policy p. 1).

**RESPONSE**: This statement is not disputed.

89. The policy includes "General Policies" for decorum, security, display location and areas, availability, size limits, duration, number and cost, among other things. Aff. Ziegelbauer ¶ 8, Exh. B.  (see policy p. 2 - 3).

**RESPONSE**: This statement is not disputed.

90. A person who wishes to use the courthouse grounds must apply for a permit to be reviewed by the Public Works Committee. Aff. Ziegelbauer ¶ 8, Exh. B  (see policy p. 3).

**RESPONSE**: This statement is not disputed.

91. The policy requires the payment of a fee, responsibilities of the permit holder and insurance and liability provisions. Aff. Ziegelbauer ¶ 8, Exh. B (see policy p. 4 - 5).

**RESPONSE**: This statement is not disputed.

92. Finally, in the "Reservation of Rights," the policy states that "[t]he issuance of a permit does not constitute approval or endorsement of an activity or event, of the group conduct the activity or event, or of the group's purpose." Aff. Ziegelbauer ¶ 8, Exh. B (see policy p. 9).

**RESPONSE**: This statement is not disputed.

93. Previously, persons or groups were allowed to place displays on the County courthouse grounds after presenting the matter to the Public Works director and then subsequent review by the Public Works committee. Aff. Beyer ¶ 19.

**RESPONSE**: This statement is not disputed.

94. Decisions were not made based upon content, but rather upon traditional time, place and manner restrictions. Aff. Beyer ¶ 19.

**RESPONSE**: This statement is **disputed**. The Manitowoc County Catholic Woman's Club and or the Knights of Columbus never had to present to the Public Works Committee before erecting the nativity scene on Courthouse grounds. The County does not have any records indicating that the approval for the Courthouse Nativity scene was based upon traditional time, place and manner restrictions. Kratz Dec. Ex. D (Responses to Requests No. 1 and 2); Beyer Aff. at ¶ 11; Def. Brief in Support of Summary Judgment Motion pg. 5, n. 2. Furthermore, that previous practice also lacked discernible standards to guide the Public Works Committee in approvals or disapprovals.

95. For example, in May 2003, the Veterans of Foreign Wars requested to locate an old mailbox on the Courthouse grounds for the collection of retired flags. Aff. Beyer ¶ 19.

**RESPONSE**: This statement is not disputed.

96. Public Works approved the same. Aff. Beyer ¶ 19.

RESPONSE: This statement is not disputed.

97. A request for placement of the fallen officer memorial was made and approved in July 2007. Aff. Beyer ¶ 19.

RESPONSE: This statement is not disputed.

98. In January and February 2009, a group called Mainly Manitowoc sought to use the courthouse for a fundraiser including serving a meal at the courthouse, but the Public Works Committee did not approve the same due to insurance and operational concerns. Aff. Beyer ¶ 19.

RESPONSE: This statement is not disputed.

99. Mainly Manitowoc subsequently filed an application and was granted a permit, but the proposed event was never held. Aff. Beyer ¶ 19.

RESPONSE: This statement is not disputed.

100. Manitowoc County has neither established nor sought to establish a religion or church. Aff. Ziegelbauer ¶ 4.

RESPONSE: This statement is **disputed**. The Supreme Court has consistently held that the Establishment Clause prohibits the government from promoting, advancing preferring or otherwise endorsing religion. See Lee v. Weisman, 505 U.S. 577. 587 (1992)( "It is beyond distpute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way in which 'establishes a [state] religion or religious faith, or tends to do so.' ")(quoting Lynch v. Donnelly, 465 U.S. 668 (1984); Abington Sch. Dist. v. Schempp, 374 U.S. 203, 231 (1963)(Brennan, J., concurring)( "While our institutions

reflect a firm conviction that we are a religious people, those institutions by solemn constitutional injunction may not officially involve religion in such a way as to prefer, discriminate against, or oppress, a particular sect or religion."); <u>Everson v. Bd. of Educ. of Ewing Tp.</u>, 330 U.S. 1, 15-16 (1947)( "The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever from they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect 'a wall of separation between Church and State.' ").  By allowing the Manitowoc County Catholic Woman's Club and/or the Knights of Columbus to erect the nativity display each December for over sixty years without requiring approval or a permit, the County gives the appearance of endorsement not only of Christianity over other faiths, but also religion over nonreligion.

101. Manitowoc County has not sought to pass laws which aid one religion, aid all religions, or prefer one religion over another. Aff. Ziegelbauer ¶ 4.

**RESPONSE**:  This statement is **disputed** for the same reasons as noted in response

to Statement No. 100.

102. Manitowoc County has not forced or influenced any persons to go to or remain away from church against his/her will or force him/her to profess a belief or disbelief in any religion. Aff. Ziegelbauer ¶ 4.

**RESPONSE**: This statement is **disputed** for the same reasons as noted in response to Statement No. 100.

103. Manitowoc County has not forced or influenced people to view or pray by the Nativity scene. Aff. Ziegelbauer ¶ 4.

**RESPONSE**: This statement is **disputed**. People are forced to view the nativity on a daily basis because of its location on the courthouse grounds. Rappel Dec. at ¶ 8. It also gives the appearance of endorsement as the response to Statement No. 100 explains.

104. To the contrary, the County maintains a Statement of its Mission, Vision and Values on its website and on a plaque prominently displayed in the interior of the Courthouse by an elevator near the grand staircase. Aff. Ziegelbauer ¶ 6.

**RESPONSE**: This statement is **disputed**. The Statement of Mission, Vision and Values does not negate the appearance of endorsement sent by the nativity display.

105. Nothing in that Statement seeks to establish a church or a religion. Aff. Ziegelbauer ¶ 6.

**RESPONSE**: This statement is **disputed** for the same reasons as noted in response to Statement No. 104.

106. That Statement includes as a "Value" respect for diversity. Aff. Ziegelbauer ¶ 6.

**RESPONSE**: This statement is not disputed.

107. It does not include any statements about religion. Aff. Ziegelbauer ¶ 6.

RESPONSE: This statement is not disputed.

108. Christmas is a public holiday in Manitowoc County. Aff. Ziegelbauer ¶ 7.

RESPONSE: This statement is **disputed** based on the County's continual endorsement of Christianity through the annual nativity scene display.   Christmas is a federal holiday based on secular considerations.  The stand-alone nativity hosted on County property gives religious significance to the holiday.

109. The holiday is celebrated like it is throughout many communities at the local, state and federal level with Christmas Day as a non-work day and, leading up to Christmas, decorations and a Christmas parade. Aff. Ziegelbauer ¶ 7.

RESPONSE:  This statement is **disputed** for the same reasons noted in response to Statement No. 108.

110. With the permission for of this display by the Women's Club, the County is not intending to promote a particular point of view in religious matters. Aff. Ziegelbauer ¶ 7.

RESPONSE: This statement is **disputed**.  Individuals in the community believe that the nativity scene sends the message that courthouse stands for Christianity and the application of faith over reason. Rappel Dec. at ¶ 9, 10. Ex. D.  It is also disputed for the same reasons as noted in response to Statement No. 108.

111. The Nativity scene adds to other secular Christmas displays on and in the Courthouse and around the city. Aff. Ziegelbauer ¶ 7.

RESPONSE: This statement is **disputed**.  There are no other Christmas displays near the nativity scene. Kratz Dec. Ex. L.  The other holiday decorations described by the

Defendants are placed in the interior of the Courthouse and not alongside the crèche. Beyer Aff. at ¶ 16.

112. The mission of the Public Works Department is to provide clean and operationally adequate working space in all facilities under the jurisdiction of the Public Works Department in the most efficient manner possible. Aff. Beyer ¶ 20.

**RESPONSE:** This statement is not disputed.

113. The Public Works Department also provides an effective and environmentally sound solid waste management system for residents of Manitowoc County. Aff. Beyer ¶ 20.

**RESPONSE:** This statement is not disputed.

114. The Public Works Department's mission does not include the endorsement of religion. Aff. Beyer ¶ 20.

**RESPONSE**: This statement is not disputed.

115. As stated above, the Department does not involve itself in the challenged Nativity scene other than allowing its placement as it has for 60 years. The display is part of the public celebration of the Christmas season. Aff. Beyer ¶ 20.

**RESPONSE**: This statement is **disputed**.  By allowing the crèche to be displayed on County property annually for the last sixty-three years, the Public Works Department sends a message of endorsement of Christianity.  This constitutes involvement.

116. FFRF alleged that the County does not have a written approval process that applies to displays on the Courthouse lawn, but that displays such as the Nativity scene receive "carte blanche approval." Complaint ¶¶ 27-28, 31.

**RESPONSE:** This statement is not disputed.

Dated this 31st day of October, 2009.

/s/ Rebecca S. Kratz    .

Rebecca S. Kratz, Staff Attorney
State Bar No. 1063232
Freedom From Religion Foundation
P.O. Box 750
Madison, WI 53701-0750
Telephone: (608) 256-8900
Facsimile: (608) 204-0422
rkratz@ffrf.org