UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FREEDOM FROM RELIGION FOUNDATION, INC.,

    Plaintiff,

v.                                                     Case No.: 08-CV-1105

MANITOWOC COUNTY, WISCONSIN
BOB ZIEGELBAUER, Manitowoc County Executive,
And JEFFREY BEYER, Manitowoc County
Public Works Director,

    Defendants.

---

**PLAINTIFF'S RESPONSE TO ADDITIONAL PROPOSED FINDINGS OF FACT**

---

Manitowoc County, Bob Ziegelbauer, and Jeffrey Beyer submitted Additional Findings of Fact in Response to Plaintiff's Motion for Summary Judgment. The Plaintiff's Reply to the Additional Findings of Fact is as follows:

1. Manitowoc County first allowed the crèche to be displayed in 1946, which is six years before the Supreme Court even applied the Establishment Clause to the states. See *Zorach v. Clauson*, 343 U.S. 306 (1952).

    **RESPONSE:** This statement is **disputed**. This statement is factually and legally erroneous. The Supreme Court applied the Establishment Clause to the states in <u>Everson v. Board of Education</u>, 330 U.S. 1, 14-15 (1947)( "The meaning and scope of the First Amendment, preventing establishment of religion or prohibiting the free exercise thereof,

in the light of its history and the evils it was designed forever to suppress, have been several times elaborated by the decisions of this Court prior to the application of the First Amendment to the states by the Fourteenth.  The broad meaning given the Amendment by these earlier cases has been accepted by this Court in its decisions concerning an individual's religious freedom rendered since the Fourteenth Amendment was interpreted to make the prohibitions of the First applicable to state action abridging religious freedom.  There is every reason to give the same application and broad interpretation to the 'establishment of religion' clause.").  At most the crèche was only on display for one year before the <u>Everson</u> decision, but as the Court in <u>Everson</u> observed, the meaning and scope of the First Amendment was elaborated by several Supreme Court decisions prior to its formal application through the Fourteenth Amendment.  <u>See id</u>.  Furthermore, the alleged permissibility of the display in 1946 is irrelevant to its constitutionality today.

2. For its first six years, therefore, there was absolutely no question about the permissibility of this display.

   **RESPONSE:** This statement is **disputed** for the same reasons as noted in response to Statement No. 1.

3. For over 60 years, until approximately 2007, there was no question by anyone about the display of the crèche until FFRF wrote a letter to Mr. Ziegelbauer in December of that year.

   **RESPONSE:** This statement is **disputed** in part.  The lack of a formal written letter prior to the letter from FFRF in 2007 does not mean the nativity scene was displayed without

controversy prior to that date. In fact, the County meeting minutes from February 1993 show that a resident wanted to counter the nativity display with a "Winter Solstice" display. See Aff. Beyer ¶ 17 and Ex. C to Aff. Beyer.

4. Paul Rappel, a Manitowoc County resident since 1956 and a former Roman Catholic, was never offended by the crèche for the majority of his life until a few years ago when he became an atheist or freethinker. See Exhibit A to Affidavit of Bitar 10/30/09 (p. 4-5); Declaration of Rappel ¶ 2.

    **RESPONSE:** This statement is **disputed** in part. Mr. Rappel stated "about 10 years ago is when it first started irritating me, and I really didn't get upset until about maybe five, six years ago." Ex. A to Gaylor Dec. 12/1/09, pg. 6, lines 13-16; Ex. A to Bitar Aff., pg. 4-5. Mr. Rappel became offended by the County's hosting of the nativity scene when he became aware of the constitutional principle of separation between state and church. Furthermore, when and how long Mr. Rappel has been offended by the Courthouse Nativity scene is irrelevant.

5. Mr. Rappel has raised his three kids Catholic. See Exhibit A to Affidavit of Bitar 10/30/09 (p. 5).

    **RESPONSE:** This statement is not disputed except that Mr. Rappel explained publicly that he decided to send his three children to Catholic schools when he was still a Catholic. Ex. A. to Gaylor Dec. 12/1/09, pg. 7, lines 2-13. He further explained publicly that today one of his sons is an atheist. Id. at pg. 21, lines 12-21. Furthermore, the religious upbringing, preferences and/or practices of his children are irrelevant.

3
Case 1:08-cv-01105-WCG   Filed 12/01/09   Page 3 of 10   Document 50

6. Mr. Rappel agrees that "when you're just driving by, you can't see [the language on the display]" until "you actually get out and look at it close, then it's very obvious." See Affidavit of Bitar 10/30/09, Exh. A (p. 6).

   **RESPONSE:** This statement is **disputed**. Mr. Rappel was referring only to the banner on the crèche angel and not to any other language or wording attached to the nativity scene. Defendants continually misrepresent Mr. Rappel's statements in their brief. In their Response Brief to Plaintiff's Motion for Summary Judgment, pg. 2, they write "when you're just driving by, you can't see [the nativity scene]." This is an incorrect recitation of the interview given on Freethought Radio by Mr. Rappel. When reviewing the entirety of the transcript, it is clear that Mr. Rappel was only referring to the words on the banner the creche's angel is holding, **not** the fifteen foot-long nativity display itself. The transcript reads, in relevant part, "Annie Laurie Gaylor: …And then there's also a Latin phrase on the angel, right? Dan Barker: Is that Gloria in Excelsis Deo? Annie Laurie Gaylor: Yeah. Paul T. Rappel: That's correct … when you're just driving by, you can't see it, but when you actually get out and look at it close, then it's very obvious." Ex. A to Gaylor Dec. 12/1/09, pg. 8, lines 15-24; Ex. A to Bitar Aff., pg. 6, lines 14-22.

7. Norbert Vogt, a Manitowoc County Board Supervisor, has never voted on any issue based upon his religious beliefs and has never acted on official matters based upon his personal religious beliefs. Vogt Aff. ¶ 5. The County Executive has similarly disclaimed that religion guides the County. Aff. Ziegelbauer ¶ 4-5

4

**RESPONSE:** This statement is **disputed**. This statement is speculative. Furthermore, Manitowoc County Board Supervisor Vogt's public comments suggest otherwise. Mr. Vogt has publicly stated that an atheist display would not be appropriate for the Courthouse exterior, and that "everyone realizes there is a Supreme Being and it would be unacceptable to have a sign denying that reality." Gaylor Dec. 9/30/09 at ¶ 11, Ex. F. Furthermore, Manitowoc County Executive Bob Ziegelbauer also stated in the Manitowoc Herald Times Reporter that the nativity scene "looks wonderful." Defendants' Answer at ¶ 30 answering ¶ 30 of Complaint (attached as Ex. A. to Kratz Dec.); Gaylor Dec. Ex. F.

8. FFRF's Co-President and Co-Founder, Annie-Laurie Gaylor, states that "the community in Manitowoc must be very, very stupid." See Exhibit A to Affidavit of Bitar 10/30/09 (p. 7).

    **RESPONSE:** This statement is **disputed.** A true and correct version of the transcript of Freethought Radio's January 31, 2009 broadcast is attached as Exhibit A to the Supplemental Declaration of Annie Laurie Gaylor 12/1/09. Ms. Gaylor never stated that the "community in Manitowoc must be very, very stupid." Gaylor Dec. 12/1/09 at ¶ 4, 5. Rather, the transcript shows that Ms. Gaylor clearly stated "the community in Manitowoc must be very conservative." Ex. A to Gaylor Dec. 12/1/09 pg. 9, lines 18-20. Furthermore, her actual comments, as well as the alleged false comments, are irrelevant.

9. Atheism qualifies as a religion. *See Kaufman v. McCaughtry,* 419 F.3d 678, 682 (7th Cir. 2005) (inmate's atheism qualified as a religion for purposes of First Amendment); *Reed*

*v. Great Lakes Cos.*, 330 F.3d 931, 933-34 (7th Cir. 2003) (finding that atheism is a form of religion and that "religion" under Title VII includes antipathy to religion).

**RESPONSE:** This statement is **disputed** in part. Some federal courts have deemed atheism a religion for purposes of the First Amendment. However, atheism is the lack of belief in a deity; "A" meaning "without"-theism. Nevertheless, the Plaintiff agrees that nonbelievers are guaranteed the same freedom of conscience as believers under the First Amendment. See Wallace v. Jaffree, 478 U.S. 38, 51-54 ("We begin with the proposition that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all. … Just as the right to speak and the right to refrain from speaking are complementary components of a broader concept of individual freedom of mind, so also the individual's freedom to choose his own creed is the counterpart of his right to refrain from accepting the creed established by the majority. At one time it was thought that this right merely proscribed the preference of one Christian sect over another, but would not require equal respect for the conscience of the infidel, the atheist, or the adherent of a non-Christian faith such as Islam or Judaism. But when the underlying principle has been examined in the crucible of litigation, the Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all.")

10. FFRF has not shown that excessive entanglement exists between Manitowoc County and religious institutions.

    **RESPONSE:** Objection. The proposed finding calls for a legal conclusion. Without

waiving said objection, this statement is **disputed**. Every year, since 1946, Manitowoc County has been entangled with the Manitowoc County Catholic Woman's Club and/or Knights of Columbus by hosting their Christian display. Defendants' Answer at ¶ 21, 22 answering ¶ 21, 22 of Comp. (attached as Ex. A. to Kratz Dec.); Kratz Dec. Ex. L, O; Gaylor Dec. 9/30/09, Ex. F; Beyer Aff. at ¶ 10; Zeigelbauer Aff. at ¶ 3.

11. FFRF has not shown that political divisiveness exists in Manitowoc County with regard to the crèche.

    **RESPONSE:** Objection. The proposed finding calls for a legal conclusion. Without waiving said objection, this statement is **disputed**. Several letters to the editor of the Manitowoc Herald Times Reporter show that individuals in Manitowoc County are offended by the display of a Christian symbol on county property. Gaylor Dec. 9/30/09 at ¶ 7, 8, Ex. A, B; Rappel Dec. 9/23/09 at ¶ 9, 10, Ex. D. Also, Mr. Vogt's public comments demonstrate political divisiveness. Vogt has publicly stated that an atheist display would not be appropriate for the Courthouse exterior, and that "everyone realizes there is a Supreme Being and it would be unacceptable to have a sign denying that reality." Gaylor Dec. 9/30/09 at ¶ 11, Ex. F.

12. FFRF has not shown that the County imposes legal or social sanctions on nonbelievers.

    **RESPONSE:** Objection. The proposed finding calls for a legal conclusion. Without waiving said objection, this statement is **disputed**. The County's continual endorsement of Christianity through the display of the crèche "… sends a message to nonadherents that they are outsiders, not full members of the political community, and an

accompanying message to adherents that they are insiders, favored members of the political community. Disapproval sends the opposite message." <u>Lynch</u>, 465 U.S. 668, 688 (1984).

13. FFRF has not shown that the County has taken any official step to declare or promote Christianity.

**RESPONSE:** Objection.  The proposed finding calls for a legal conclusion.  Without waiving said objection, this statement is **disputed**. The Supreme Court has consistently held that the Establishment Clause prohibits the government from promoting, advancing preferring or otherwise endorsing religion.  See <u>Lee v. Weisman</u>, 505 U.S. 577. 587 (1992)( "It is beyond distpute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way in which 'establishes a [state] religion or religious faith, or tends to do so.' ")(quoting <u>Lynch v. Donnelly</u>, 465 U.S. 668 (1984); <u>Abington Sch. Dist. v. Schempp</u>, 374 U.S. 203, 231 (1963)(Brennan, J., concurring)( "While our institutions reflect a firm conviction that we are a religious people, those institutions by solemn constitutional injunction may not officially involve religion in such a way as to prefer, discriminate against, or oppress, a particular sect or religion."); <u>Everson v. Bd. of Educ. of Ewing Tp.</u>, 330 U.S. 1, 15-16 (1947)( "The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion.

8

Case 1:08-cv-01105-WCG   Filed 12/01/09   Page 8 of 10   Document 50

No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect 'a wall of separation between Church and State.' "). By allowing the Manitowoc County Catholic Woman's Club and/or the Knights of Columbus to erect the nativity display each December for over sixty years without requiring approval or a permit, the County gives the appearance of endorsement not only of Christianity over other faiths, but also religion over nonreligion.

14. FFRF has not shown that the County has involved itself in the Catholic Women's Club or the maintenance or erection of this display.

    **RESPONSE:** Objection. The proposed finding calls for a legal conclusion. Without waiving said objection, this statement is **disputed**. By allowing the crèche to be displayed on County property annually for over sixty years, Manitowoc County sends a message of endorsement of Christianity. This constitutes involvement. Defendants' Answer at ¶ 21, 22 answering ¶ 21, 22 of Comp. (attached as Ex. A. to Kratz Dec.); Kratz Dec. Ex. L, O; Gaylor Dec. 9/30/09, Ex. F; Beyer Aff. at ¶ 10; Zeigelbauer Aff. at ¶ 3.

15. FFRF has not shown that the County treats other religions or nonbelievers unfavorably.

    **RESPONSE:** Objection. The proposed finding calls for a legal conclusion. Without waiving said objection, this statement is **disputed**. Manitowoc County Board Supervisor Norbert Vogt has publicly stated that an atheist display would not be appropriate for the Courthouse exterior, and that "everyone realizes there is a Supreme Being and it would be unacceptable to have a sign denying that reality." Gaylor Dec. 9/30/09 at ¶ 11, Ex. F.

Dated this 1st of December, 2009.

/s/ Rebecca S. Kratz

_____

Rebecca S. Kratz, Staff Attorney
State Bar No. 1063232
Freedom From Religion Foundation
P.O. Box 750
Madison, WI 53701-0750
Telephone: (608) 256-8900
Facsimile: (608) 204-0422
rkratz@ffrf.org